[Civ. No. 908.   Third Appellate District.—February 7, 1912.]

## A. BONSLETT, Respondent, v. BUTTE COUNTY CANAL COMPANY, Appellant.

Mandamus—Compelling Delivery of Water Sold—Written Provision Controlling Printed Part.—It is held that the plaintiff is entitled to a writ of mandate to compel the delivery of water sold, under a written provision in a contract with the defendant canal company, that the water should be delivered at the highest point on the north line of the section in which plaintiff's land is situated, where it appears that the defendant has a lateral branch from its main canal extending to such highest point, and that such written provision is controlling, as against a mere printed provision, that the water should be taken from its main canal some miles distant from said section.

Id.—Demurrer to Complaint Properly Overruled.—A demurrer to the complaint resting on such printed provision in the contract, relied upon by defendant, was properly overruled.

Id.—Rule as to Partly Written and Partly Printed Provisions in Contract.—Where a contract is partly written and partly printed, or is written or printed under special directions of the parties to meet their intention, and the remainder is copied from a form originally prepared without special reference to the particular parties or contract in question, the written controls the printed portions. If the two are absolutely repugnant, the printed part must be disregarded.

Id.—General Rules as to Construction of Contracts—Intention of Parties—Ambiguity—Explanation by Circumstances.—In construing a contract, the intention of the parties is to govern, and is to be ascertained from the writing alone, if possible. Where there is ambiguity or uncertainty, the contract must be interpreted in the sense in which the promisor believed at the time of making it the promisee understood it. The contract may be explained by reference to the circumstances under which it was made, and the matter to which it relates; and such circumstances, including the situation of the subject of the instrument and of the parties to it, may be shown, so that the judge may be placed in the position of those whose language he is to interpret.

Id.—Construction of Written Clause in Contract—Point of Delivery—Time of First Payment—Succeeding Printed Clause.—It is held that reading the entire instrument, and having in view the rules of interpretation, the written clause—"first payment to commence at such time as the water may be ready for delivery at the highest level on the north line of the northwest quarter of said section seven"—is to be interpreted as indicating the point of delivery of water, as well as the time when payment for the water was to commence; and that a printed clause immediately following, indicating a different point of delivery, must, if repugnant thereto, be disregarded.

Id.—Proper Evidence Admitted to Resolve Doubt.—It is held that any doubt as to the meaning of the terms of the contract has been satisfactorily resolved by the evidence rightly admitted for that purpose.

Id.—Evidence Supporting Findings.—It is held that the evidence supports all of the findings made for the plaintiff and against the defendant as to the terms of the contract, as to defendant's acquiescence in and confirmation of plaintiff's construction thereof, as to defendant's ownership and control of the lateral ditch constructed by defendant to carry water to plaintiff's land, and its actual delivery through the same of all water paid for by plaintiff, and its ability to deliver all water through the same in compliance with its agreement.

APPEAL from a judgment of the Superior Court of Butte County, and from an order denying a new trial.   John C. Gray, Judge.

The facts are stated in the opinion of the court.

George F. Jones, and W. H. Carlin, for Appellant.

W. E. Duncan, Jr., for Respondent.

CHIPMAN, P. J.—*Mandamus.*   Plaintiff brings the action to compel defendant to deliver water to plaintiff's land in accordance with the agreement set forth in his amended complaint.   It is alleged that defendant is a corporation formed "for the purpose of appropriating and selling water for irrigation and domestic purposes in the county of Butte, . . . and of constructing and maintaining a system of canals, main branch and lateral ditches for the distribution and sale of said water so appropriated by it"; that "defendant has heretofore constructed and is now the owner of a certain system of canals, main branch and lateral ditches diverting water from Feather river and conveying the same to various points in Butte and Sutter counties"; that part of said system of canals is a certain canal which diverts water from the west side of said river, about five miles below the city of Oroville, following the contour of the country south through Butte county into Sutter county herein designated for convenience "Butte County Canal"; that, in addition to said canal, defendant is also "the owner of certain other canals, main branch and lateral ditches aggregating twenty miles in length, exclusive of said 'Butte County Canal'; and is also the owner of all the water flowing in all of said system of canals"; that defendant "is and at all of the times herein mentioned has been the owner of a certain main branch or lateral ditch designated for convenience as 'Lateral No. 6,' which said lateral diverts water from said Butte County Canal at a point (particularly describing it) and said main branch or lateral ditch extending thence in a general southwesterly direction through the lands of (describing various tracts of land), and ending on the north line of the northwest quarter of section 7, township 17 north, range 3 east, M. D. M.   Said

lateral No. 6 being about four miles in length and approximately running along the high ridge south of what is known as Morrison's slough. That the southwesterly or lower end of said 'Lateral No. 6' main branch ditch is on the highest possible level on the north line of the northwest quarter of said section seven''; that plaintiff is the owner of the southeast quarter of the northwest quarter of said section 7; that, on June 29, 1904, defendant entered into an agreement with plaintiff by which defendant agreed to sell to plaintiff ''such water as might be required by him to irrigate the crops of trees growing upon said lands herein described, not exceeding at any given time at a rate of one cubic foot of water per second for each one hundred and sixty acres . . . and agreed to deliver to the plaintiff the said water at the highest possible level on the north line of the northwest quarter of said section 7,'' a copy of which agreement is attached to the complaint as exhibit ''A''; that said agreement was prepared by defendant upon a form partly printed, used and furnished by defendant, a portion of which is written, as indicated; that plaintiff has complied with each and all the terms of said agreement and is able and willing hereafter to continue to do so; that, ever since April 15, 1904, there has been a large quantity of water flowing through said Butte county canal, which quantity is and at all times herein mentioned has been sufficient to supply all consumers using water under contract with defendant, and at all said times defendant has had water sufficient to supply plaintiff for the irrigation of said land; that it is practicable to irrigate said lands from the end of said ''Lateral No. 6'' on the highest point on the north line of the northwest quarter of said section 7, and said water is necessary to irrigate plaintiff's said land, and defendant is able to and can, if it desires, deliver water to plaintiff at said point as specified in said agreement. Then follow averments that, on May 1, 1910, plaintiff demanded of defendant to deliver water to plaintiff as by the terms of said agreement provided, said delivery to be made on May 5, 1910; that defendant was then in a position to deliver and could have delivered, if it had desired, the water to which plaintiff was entitled under said agreement, but defendant neglected and refused to so deliver or deliver water at all to plaintiff; that unless water is immediately delivered to plaintiff at the said

point mentioned in said agreement plaintiff's crops will be damaged in the sum of $400; that plaintiff is the party beneficially interested and has no plain, speedy and adequate remedy in the ordinary course of law, and that plaintiff has no means of irrigating said land except by and through said "Lateral No. 6," and that the law specifically enjoins upon defendant, as a public service corporation, the duty of supplying water to plaintiff as set forth in said agreement.

Defendant interposed a general demurrer to the complaint, and also demurred thereto as ambiguous in certain particulars. Demurrer was overruled and defendant answered: Admitted corporate capacity and its general purposes as alleged in the complaint; denied ownership or control of the alleged branch or lateral ditch, but alleged ownership of a canal conveying water to various points in said counties; admitted ownership of water flowing through its main canal, but denied ownership of water in any alleged branch or lateral connecting with said canal; denied the averments of the complaint as to lateral No. 6; admitted plaintiff's ownership of land as alleged and the execution of the contract of March 29, 1904, but denied that by said or any agreement it agreed to deliver water on the north line of said northwest quarter of said section 7; admitted that defendant is able and can deliver water to plaintiff at the point specified in said agreement, but denies that said point is other than a point on the line of its main canal, at which point it is alleged by defendant the agreement specifically provided that water should be delivered, and alleged its readiness to deliver water to plaintiff at said point; denied the averments of injury to plaintiff's crops and as to damage thereto; alleged that by said agreement defendant agreed to furnish water to plaintiff at a point on its main canal and not otherwise, which it is now and at all said times has been ready to do.

The court made findings substantially in accord with the averments of the complaint. In the matter of the alleged agreement the court found that prior thereto, to wit, December 2, 1903, defendant entered into an agreement with plaintiff to deliver him water "in a branch line running on the north line of the said land of plaintiff," which agreement is set forth in the findings; "that thereafter it was discovered by the parties to said agreement that it was impracticable to

run a main branch or lateral ditch upon the north line of said lands of plaintiff for the reason that said north line was lower at the northwest and northeast corner than at the point between said points; that, for the purpose of overcoming and obviating the physical difficulty preventing the defendant from delivering said water through said ditch to be run upon said plaintiff's north line, the said plaintiff and defendant entered into a further agreement of the twenty-ninth day of June, 1904," the agreement mentioned in said complaint. "That in said agreement of December 2, 1903, defendant agreed to deliver said water to said plaintiff in a lateral or main branch ditch running on the north line of said plaintiff's land. That in and by said agreement of June 29, 1904, the said defendant agreed to deliver said water to plaintiff at the highest possible level on the north line of the northwest quarter of said section 7." That the intention of the parties, by the agreement of June 29, 1904, was "to change the manner or mode of delivery of said water from delivering the same through a main branch or lateral ditch, running upon the north line of the land of plaintiff, to providing for the delivery of said water upon the highest possible level on the north line of lands of said plaintiff."

Plaintiff had judgment as prayed for with $50 damages and costs of suit.

Defendant appeals from the judgment and from the order denying its motion for a new trial.

Defendant contends: 1. That the demurrer for insufficiency of facts should have been sustained; 2. That the court erred in admitting testimony for the purpose of construing the contract in question; 3. That plaintiff failed to prove the ability of defendant to comply with the writ prayed for.

It becomes necessary to set forth so much of the agreement of June 29, 1904, as will illustrate the points made by the parties respectively. It consists of a printed form, used by defendant, in which certain portions are written, which latter will be indicated by italics. It purports to have been made by defendant as first party and plaintiff as second party:

"Witnesseth: That for and in consideration of the mutual covenants and considerations herein set forth, the parties hereto mutually agree, that is to say, the party of the first part agrees, *to furnish to the party of the second part from*

its system of canals, to be constructed by it, all the water that may be required (not exceeding at any given time at the rate of 1 cubic foot per second for each 160 acres), for the purpose of irrigating the following described lands, to wit:

"*The southeast quarter of the northwest quarter of section seven (7) in township seventeen north, range three east, containing forty (40) acres of land, in the county of Butte, state of California.*

"The party of the second part, A. Bonslett, hereby reserves *the right to re-locate water on any other forty (40) acres in the northwest quarter of said section seven (7) at any time prior to the use of water.*

*  "First payment to commence at such a time as water may be ready for delivery at the highest possible level on the north line of the northwest quarter of said section seven (7).*

—from the time of the completion and delivery of water in the main canal of said system to such a point as is most convenient for the delivery of water in same for use on said lands, at which point the said party of the second part agrees to take and receive such water.

"The party of the first part agrees to place a suitable gate (if there is not already one there), in the bank of said canal or a main branch thereof, at the point at which water is to be delivered to the party of the second part.

"The party of the second part shall construct a ditch from said gate to said land at his own risk, cost and expense, and shall maintain and keep in repair the same; and it is further agreed that said ditch so constructed and maintained may, at the option of the party of the first part, become a branch ditch of the said party of the first part and be under its control; in such event it shall have the right to use and enlarge such ditch, provided such use shall not interfere with the flow of water to said land.  And the party of the second part hereby grants to the party of the first part rights of way over and through said land, with right of entry thereon for the purpose of constructing, using and repairing ditches, canals, pipes and flumes across said land, and the flowing of water in a practical and customary manner, including all privileges necessary or convenient to the full enjoyment of said right of way; said rights of way, and uses to be used with due regard for the rights of the party of the second part.

"It is understood and agreed that the water covered by this agreement shall not be used by the party of the second part on any lands except those herein described, nor shall the same be by him permitted to go to waste or be discharged upon other lands; . . . .

"The party of the second part, in consideration of the construction of said main canal, and ditch rights and delivery of water agrees to pay annually to the party of the first part, at its office, in gold coin of the United States, on the first day of September of each and every year hereafter, the sum of *sixty (60) Dollars*, (that is to say at the rate of $1.50 per acre annually), the first annual payment hereunder to become due and payable on the first day of September in the year in which water is first delivered at said gate, and shall be paid annually thereafter; . . .

"It is further agreed, that the party of the first part may shut off the water for the purposes of general or special repair of its canals or ditches, dams, gates, etc., in the fall of any year and at such other times as urgent necessity may require; but shall restore the water in said canals or ditches as speedily as possible, the conditions, circumstances and requirements considered.

"If at any time the quantity of water flowing in the main canals shall be less than the full capacity thereof, each piece of land covered by water contracts with the party of the first part shall be entitled only to its proportional share of the water then flowing. . . . "

Certain rules are found in the codes, bearing upon the contentions of the respective parties, which must be borne in mind. The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity (Civ. Code, sec. 1638); and, subject to certain other rules, the intention of the parties is to be ascertained from the writing alone, if possible (Id., sec. 1639). The whole of the contract is to be taken together, each clause helping to interpret the other (Id., sec. 1641). A contract may be explained by reference to the circumstances under which it was made, and the matter to which it relates (Id., sec. 1647). Where there is ambiguity or uncertainty, the contract must be interpreted in the sense in which the promisor believed, at the time of making it, the promisee under-

stood it. (Id., sec. 1649.) Where a contract is partly written and partly printed, or is written or printed under special directions of the parties, to meet their intention, and the remainder is copied from a form originally prepared without special reference to the particular parties or contract in question, the written controls the printed parts. If the two are absolutely repugnant, the printed part must be disregarded (Id., 1651). The circumstances under which the contract was made, including the situation of the subject of the instrument, and of the parties to it, may also be shown, so that the judge be placed in the position of those whose language he is to interpret. (Code Civ. Proc., sec. 1860.)

Each party contends that the agreement is free from ambiguity and uncertainty and that its intention is plainly to be ascertained from its language and needs no interpretation. Unfortunately, the parties disagree radically as to the intention said to be imported so plainly by the language. The only conclusion to be derived from these conflicting views is that there must be ambiguity or uncertainty in this plain language, else two diametrically contrary results could not be reached from it, namely, by plaintiff, that defendant was to deliver water at the highest point on the north line of the said northwest quarter of section 7; by defendant, that it was to be delivered at a point on its main canal some miles distant from plaintiff's land. If forced to reach a conclusion from the language of the agreement alone, we think the more reasonable interpretation would be that given by plaintiff. Reading the entire instrument and having in view the rules above stated, we should feel inclined to interpret the written clause—''first payment to commence at such time as water may be ready for delivery at the highest possible level on the north line of the northwest quarter of said section seven''— to indicate the point of delivery of water as well as indicating the time when payment for water was to commence. The clause immediately following is the provision on which defendant relies, but it is part of the printed portion of the contract and must be harmonized with the written part, or, if repugnant thereto, must be disregarded. One thing is clear to our minds, namely, that if there was uncertainty it was as to the point where the water was to be delivered by defendant. It agreed to deliver water to plaintiff ''from its

system of canals . . . for the purpose of irrigating the following described lands." It agreed to place a gate for plaintiff's use "in the bank of said canal, *or a main branch thereof*, at the point at which water is to be delivered to" plaintiff. The clause—"from the time of the completion and delivery of water in the main canal of said system to such point as is most convenient for the delivery of water in same for use on said lands"—is printed and is not connected with what precedes it in a way to show what is meant, and is in fact an incomplete sentence. It is not probable that plaintiff would have surrendered a contract more favorable to him and have agreed to pay for water delivered some miles from his land and without any apparent means of bringing it to his land, but defendant claims such to have been the agreement. There is certainly room for grave doubt as to the contract's having such meaning. This doubt was satisfactorily resolved by the evidence which we think was rightly admitted.

It appeared that, in December, 1903, a contract was made with plaintiff by the agent of defendant and in its behalf, by which, as found by the court, defendant agreed to deliver the water contracted for "in the main branch running on the north line of said place (plaintiff's land) of said system to such a point as is most convenient for the delivery of water in same for use on said lands, at which point the said party of the second part (plaintiff) agrees to take and receive such water." The finding of the court as to this contract and the reason given for making a new one is supported by the evidence. Plaintiff testified that at the time the second contract, June 29, 1904, was entered into it was represented to him that defendant would deliver the water at the highest point on the north line of the northwest quarter of section 7. At that time neither the lateral nor the main canal had been completed. Later the canal was completed and a ditch constructed to the point named, called "Lateral No. 6," and on through plaintiff's land. Defendant sent statements to plaintiff for rental for 1905, 1906 and 1907, which he ignored. He was called to defendant's office, and he then told defendant that he would pay for water when delivered to him, whereupon he was informed that the defendant would do so and, shortly after, plaintiff received the water at the point claimed by him as agreed upon and he paid defendant for water thus

delivered for 1908 and 1909. This was an acquiescence in and confirmation by defendant of plaintiff's construction of the contract.

Upon the question of ownership or control of lateral No. 6, there was evidence that it was constructed by labor paid for by defendant, and we have seen that defendant so far controlled it as to deliver water to plaintiff through this lateral. Defendant introduced no evidence on any issue. We think the finding on the question of defendant's ownership or control of this branch ditch finds support in the evidence.

Defendant admits its liability to furnish all the water it agreed to deliver, its claim being that it was to be delivered at its main canal. That it did deliver water to plaintiff through the lateral No. 6 and collected rentals for the service is shown without conflict, and there was evidence from which the inference was justified that defendant has the ability, if so minded, to now comply with its agreement as the trial court found it to be.

The demurrer rested on defendant's construction of the contract, and, as we think such construction unwarranted, the demurrer was rightly overruled.

The judgment and order are affirmed.

Hart, J., and Burnett, J., concurred.