[Civ. No. 2721. Third Appellate District.—February 5, 1926.]

R. C. FARREN et al., Respondents, v. E. E. WILLARD, Appellant.

[1] LANDLORD AND TENANT—AGREEMENT TO DRIVE WELLS AND INSTALL PUMPING PLANT—FAILURE OF PERFORMANCE BY LANDLORD—REBATE OF RENT—INFERENCES.—Where a landlord covenants to drive wells and install pumping plants of sufficient capacity to irrigate a portion of the land leased, the fact that the lease does not provide for rebate of rent on account of the failure of the landlord to comply with his covenant does not relieve him from the legal liability to perform his covenants contained in the lease, and the performance within a reasonable time and early enough to enable the tenant to use the water when required is necessarily inferred from the covenant to sink the wells and install the pumps and machinery necessary to their operation.

[2] ID.—INSUFFICIENT SUPPLY OF WATER—LANDLORD NOT RELIEVED FROM PERFORMANCE OF COVENANT.—The fact that the landlord did not guarantee that the wells would furnish sufficient water does not relieve him from the performance of his part of the covenants contained in the lease.

[3] SALES — CONTRACT FOR SALE OF WELL EQUIPMENT — DELIVERY — STRIKES—NEGLIGENCE OF SELLER.—A provision in a contract for the sale of certain pumps, motors, and equipment to the effect that the time of delivery named in the contract is contingent upon delays occasioned by strikes, civil or military authority, or other hindrances beyond the seller's control, does not relieve the seller from its own negligence and unexplained delay in executing the order for the machinery promptly, as covenanted by it in the agreement.

[4] ID.—REPUGNANCY BETWEEN WRITTEN AND PRINTED CLAUSES OF CONTRACT—CONSTRUCTION.—Under section 1651 of the Civil Code, if there was any repugnancy between a written clause in said contract providing that shipment of the pumps would be made at once and the printed clause providing that the time of delivery named in the contract was contingent upon delays occasioned by strikes, civil or military authority, or other hindrances beyond the seller's control, the written provision is controlling.

[5] ID.—INTERPRETATION OF CONTRACT—SECTION 1652, CIVIL CODE.— Section 1652 of the Civil Code provides for an interpretation which will give effect to all the clauses of a contract.

[6] ID. — SENSE IN WHICH PROMISOR BELIEVED PROMISEE UNDERSTOOD CONTRACT WHEN MADE—CONSTRUCTION.—If a contract is ambiguous in any respect, it must be interpreted in the sense in which the promisor believed, at the time of making it, that the promisee understood it.

[7] ID.—SALE OF WELL EQUIPMENT AND MACHINERY—FAILURE TO COMPLY WITH CONTRACT—NEGLIGENCE OF SELLER—DAMAGES—LANDLORD AND TENANT—RENT—VOLUNTARY PAYMENT.—In an action to recover the balance due upon a contract for the purchase of certain well machinery and equipment, where the defendant, by cross-complaint, sought recovery of damages on account of plaintiff's negligent failure to furnish said machinery and equipment according to the contract and because of which defendant was unable to supply his tenant with water to irrigate a portion of the land leased in accordance with the covenants of his lease, the giving of credit by the landlord to the tenant of a sum equal to the rent covenanted to be paid on said portion of the land, without await-

4.   See 6 Cal. Jur. 283; 6 R. C. L. 847.
5.   See 6 Cal. Jur. 258; 6 R. C. L. 837.
6.   See 6 Cal. Jur. 309.

ing suit by the tenant, due to the seller's said negligence in failing to ship said machinery and equipment in accordance with the contract of sale, did not constitute a "voluntary payment" precluding the landlord from recovering therefor on his cross-complaint against the seller for damages for breach of contract.

---

(1) 36 C. J., p. 194, n. 89.   (2) 36 C. J., p. 194, n. 89.   (3) 35 Cyc., p. 247, n. 39.   (4) 13 C. J., p. 536, n. 87; 35 Cyc., p. 97, n. 6. (5) 13 C. J., p. 527, n. 44, 46; 35 Cyc., p. 96, n. 88.   (6) 13 C. J., p. 524, n. 27.   (7) 35 Cyc., p. 647, n. 63.

APPEAL from a judgment of the Superior Court of Glenn County.  H. C. Bell, Judge.  Reversed.

The facts are stated in the opinion of the court.

Arthur C. Huston for Appellant.

D. T. Jenkins for Respondents.

THE COURT.—On the thirtieth day of January, 1920, the defendant entered into a contract with the plaintiff Western Well Works, Incorporated, whereby the plaintiff agreed to furnish certain pumps, motors, and equipment and the defendant agreed to pay therefor the sum specified in said contract.  This action is for a balance alleged to be due on account of the unpaid portion of the purchase price of said equipment.  The defendant, by cross-complaint, alleged damages for failure on the part of the plaintiff, Western Well Works, Incorporated, to furnish the pumps, motors, and equipment according to the terms of said contract, the damages sought to be recovered being damages alleged to have been suffered by reason of such delay on the part of said plaintiff in fulfilling its contract.  Upon the conclusion of the testimony, the court granted a nonsuit as to defendant's cross-complaint and directed judgment for the plaintiff for the unpaid portion of the amount agreed to be paid by the defendant for the pumps, motors, etc.  From this judgment the defendant appeals.

It appears from the testimony in this case that preceding the execution of the contract between the said Western Well Works, Incorporated, and the defendant Willard, certain agents of said plaintiff called upon said Willard and

negotiations were had, leading up to the execution of the contract for the purchase of the machinery and equipment mentioned therein; that the defendant refused to sign the printed form of the contract submitted to him by the agents of the plaintiff, unless provision were made therein for the immediate delivery of the articles about to be ordered. It further appears that the agent, not being authorized to make any change in the written form of the contract tendered to the defendant, communicated with the plaintiff at its home office and was instructed and authorized to arrange for delivery as required by the defendant, and thereupon there was inserted in said contract the following written clause: "Delivery: Shipment to be made of all three pumps at once." It appears that the reason for desiring immediate delivery was that certain lands rented by the defendant were to be seeded to rice and that the pumps and equipment should be installed and in working order by the first day of May of the year 1920. The contract referred to contained, among other things, that the plaintiff, Western Well Works, Incorporated, would install the pumping machinery, and other conditions which we need not mention, and also had therein the following printed clause: "Responsibility: The time of delivery named above is contingent upon delays occasioned by strikes, civil or military authority, or other hindrance or calamities beyond our control, nor do we assume any liability for damage on account of delays, or for defective material furnished other than to make good such defects as may be proved to have existed when said material was furnished." The transcript further shows that the Western Well Works, Incorporated, did not have on hand and was not a manufacturer of electrical motors, but these facts were not disclosed to the defendant. It also appears that notwithstanding the written portion of the contract to make delivery at once, the plaintiff, Western Well Works, Incorporated, did not order or make any effort to secure the electrical motors contracted to be delivered until on or about the fourteenth day of April, 1920, seventy-three days after the date of the contract first herein referred to. The answer of the plaintiff, Western Well Works, Incorporated, admits that sixty days was a reasonable time within which to furnish the machinery contracted to be delivered. It also appears that the motors ordered by the plaintiff, Western Well Works, Incorporated,

on the fourteenth day of April, 1920, were delivered within sixty days of the date of the order given therefor. No explanation appears of why seventy-three days were allowed to elapse between the date of receiving the order signed by the defendant and the date when the plaintiff, Western Well Works, Incorporated, ordered the motors in question contracted to be delivered by them.

[1] It appears from the transcript that the defendant Willard had leased some two thousand five hundred acres of land to a tenant by the name of Marr to be seeded to rice; that all but two hundred acres of land were subject to irrigation by waters obtained from a canal company; that two hundred acres of the land in question were of such elevation that irrigation could not be had by water furnished through the canals of the irrigation district and therefore in the lease executed by the defendant to his tenant Marr there was inserted the following covenant: ''It is further understood and agreed between the parties hereto that the party of the first part (the defendant herein) will at his own proper charge and expense drive down wells and install pumping plants or units in sufficient numbers with which to irrigate all that portion of land which lies above or is too high to be irrigated from the Main or Central canal, etc.'' The lease in question also contained the following subdivision: ''It being understood and agreed however, between the parties hereto that the party of the first part does not become the guarantor or the insurer that the whole or any amount of said water shall be furnished at any time during the term of this lease, or any year thereof or that water will be furnished to said land that can be irrigated from said Main Canal, etc.'' Provision was further made in the lease for a rebate of rent upon failure of water furnished by the irrigation district through its canals. There does not appear in the lease any provision for rebate of rent on account of any failure of the lessor Willard to comply with his covenant. The lack of such a covenant, however, does not relieve him from the legal liability to perform his covenants as contained in the lease, and the argument to the contrary does not seem to us to require any consideration further than to state that performance within a reasonable time and at a time early enough to enable his tenant to use the water

when required is necessarily inferred from the covenant to sink the wells, install the pumps and machinery necessary to operate the same. **[2]** It may be true that he did not guarantee that the wells would furnish sufficient water, but that does not in anywise relieve the lessor from the performance of his part of the covenants contained in the lease. It further appears from the transcript that the rental agreed to be paid for the leased land was the sum of forty dollars per acre and that promissory notes were executed therefor; that upon failure to furnish water for the two hundred acres in question, and which were not seeded by the tenant on account of the water not being furnished, the defendant Willard, as lessor, gave his tenant credit for the sum of eight thousand dollars, the rent covenanted to be paid for the two hundred acres in question. The testimony further shows that in order to properly cultivate the rice, the water should have been furnished by the first day of May; that the water was not furnished by reason of the failure of the plaintiff, Western Well Works, Incorporated, to furnish the equipment contracted for promptly, as specified in the agreement.

**[3]** As a defense to this action on appeal, the respondent calls our attention to the responsibility clause printed in the contract and argues that the Western Well Works, Incorporated, incurred no responsibility by reason of its failure when ordering the machinery until seventy-three days had elapsed after receiving its contract and order from the defendant Willard. While other reasons which will be stated hereafter are sufficient to show that the so-called responsibility clause has no bearing whatever upon this case, it may be well to call attention to the fact that a reasonable interpretation of that clause leads to the conclusion that the plaintiff, Western Well Works, Incorporated, is not excused for any negligence on its part in performing its contract according to the terms and time therein specified, but is only excused by delays occasioned by strikes, civil or military authority, or other hindrances or calamities beyond its control. The whole clause, we think, must be read together and two or three words contained therein cannot be extracted therefrom and given a meaning different from the predicate or basis upon which the release from liability is founded. We do not

think there can be incorporated into this provision of the contract, as we have set it forth, the idea that the Western Wells Works, Incorporated, is contracting to be relieved from its own negligence and unexplained delay in executing the order for the machinery promptly, as covenanted by it in the agreement.

[4] There is another principle of law, as we have said, which is applicable and controlling here (sec. 1651, Civ. Code): "Where a contract is partly written and partly printed, or where part of it is written or printed under the special directions of the parties, and with a special view to their intentions, and the remainder is copied from a form originally prepared without special reference to the particular parties and the particular contract in question, the written parts control the printed parts, and the parts which are purely original control those which are copied from a form. And if the two are absolutely repugnant, the latter must be so far disregarded." This gives precedence to the written clause to which we have hereinbefore referred and if there is any repugnancy between it and the printed responsibility clause contained in the contract, the written provision is controlling. Thus, if by any possible construction the responsibility clause being printed can be held to excuse the Western Well Works, Incorporated, from its own inexcused delay, the written provision to which we have referred would be repugnant thereto, and would be the one by which this contract is governed. [5] Again, section 1652 of the Civil Code provides for an interpretation which will give effect to all of the clauses of the contract. By the interpretation which we have adopted, effect is given to all of the clauses of the contract, when the responsibility clause is limited to the basis or predicate upon which it is founded, to wit: strikes, civil or military authority, hindrances, or calamities beyond the control of the contracting party. [6] If the contract is ambiguous in any respect, it must be interpreted in the sense in which the promisor believed at the time of making it that the promisee understood it. (Sec. 1649, Civ. Code.)

The transcript shows beyond question that the parties to the contract were contracting for delivery at once. While it does not seem necessary to cite any authorities to support the application of the sections of the Civil Code in the pres-

ent case, yet we will refer to the following: *Henne* v. *Summers,* 16 Cal. App. 67, on pages 70 and 71 [116 Pac. 86], refers to the sections which we are considering and sets forth the law governing contracts where there is a written and a printed portion, just as we have above stated. In the case of *Bonslett* v. *Butte etc. Canal Co.,* 18 Cal. App. 149 [122 Pac. 821], this court, speaking through Presiding Justice Chipman, referring to the sections which we are considering, says: ''Where a contract is partly written and partly printed, or is written or printed under special directions of the parties to meet their intention, and the remainder is copied from a form originally prepared without special reference to the particular parties or contract in question, the written controls the printed portions. If the two are absolutely repugnant, the printed part must be disregarded.'' Other cases might be cited supporting the rule above quoted, but so doing would only unnecessarily extend the length of this opinion.

[7] It is finally argued by the respondent that the defendant Willard has suffered no damage by reason of the failure of the plaintiff to promptly perform its part of the contract, according to the agreement therein contained. It is argued that the giving of credit on the promissory note executed by the defendant Marr of the sum of eight thousand dollars, being equivalent to the rental covenanted to be paid for the lands that were not seeded to rice, or upon which rice was not grown, was purely voluntary; that if the defendant Willard was liable to Marr for any item of damages, it is not alone for the rent covenanted to be paid, but also for the profits that might have been realized from the rice that could have been grown upon the premises had water been furnished. This is only an argument as to the amount of the defendant Willard's liability to his tenant by reason of the failure of the lessor Willard to comply with the terms of his lease and does not go to the question of liability. Nor do we think the credit on the promissory note can be construed in the light of a voluntary action on the part of the defendant Willard. Willard was under the legal liability of recompensing his tenant for all damages suffered by the latter by reason of Willard's failure to install pumps, etc., as agreed to by him, and the fact that Willard acknowledged his liability and sought to make

amends before awaiting suit upon his contract does not alter the situation as to the damages suffered by the defendant Willard by reason of the plaintiff's negligence to comply with the terms of its contract. The amount of damages is entirely outside the question of liability. The giving of credit by Willard to his tenant of a sum equal to the rent covenanted to be paid without awaiting suit, in law, is no more a voluntary payment than would be the discharge of a lien upon one's premises without waiting for foreclosure proceedings.

It is next argued that if the lands had been seeded to rice, it is probable that no crop would have been harvested therefrom by reason of the fact that certain portions constituting the lower lands of the two thousand five hundred acre tract included in the lease were not harvested by reason of being flooded during the harvest time. We find no merit in this contention.

It follows from what has been said that the judgment appealed from must be reversed and the order granting a nonsuit as to the defendant's cross-complaint set aside, and it is so ordered.

A petition by respondents to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on April 5, 1926.