Cravens v. The Eagle Cotton Mills Company.

No. 14,340.

## CRAVENS v. THE EAGLE COTTON MILLS COMPANY.

CORPORATION.—*Subscription for Stock.*—*Contract.*—*Collateral Matters.*—Where a corporation is organized for the purpose of acquiring and operating a cotton mill, any pending negotiations between such corporation and another corporation, engaged in the same business, relating to the purchase of the latter's plant and good-will, are matters collateral to contracts of subscription made with the new corporation, and in no manner affect or enter into the same.

SAME.—*Collateral Agreement.*—*Consummation of.*—*Parol Evidence.*—Where a subscriber claims exoneration from liability on his subscription on the ground that an alleged previous agreement between the corporation and another company for the purchase of its plant has been changed and the purchase made upon different terms, it is competent to show that no agreement between the two corporations was consummated prior to the contract of subscription.

SAME.—*Condition Precedent.*—*Liability for Subscription.*—A stipulation in a contract of subscription that the amount subscribed is not to be payable until any contract which may be made with another corporation for the purchase of its mills has been ratified by the persons holding a majority of the stock, has reference to a matter collateral to the contract of subscription, and the making of a contract of a specified character is not a condition precedent to the liability of the subscribers for stock, and they can not withdraw their subscriptions, or defeat their collection by assailing the contract that is actually made and ratified as stipulated.

SAME.—*Conditional Subscription.*—*Acceptance.*—Where subscriptions are made upon the condition that solvent subscriptions to a certain amount shall be obtained, the obtaining of the required amount is an effectual acceptance of all conditional subscriptions, and the latter then become absolute.

SAME.—*Withdrawal of Subscription.*—A subscriber can not withdraw his subscription, even though it be conditional, unless unreasonable delay occurs in performing the condition.

SAME.—*Existence of Corporation.*—*Estoppel.*—Where a contract of subscription is made upon the assumption of the existence of the corporation, both the corporation and the subscriber are afterwards estopped from denying its existence.

From the Jennings Circuit Court.

Cravens *v.* The Eagle Cotton Mills Company.

*C. E. Walker, A. D. Vanosdol* and *H. Francisco,* for appellant.

*C. A. Korbly* and *W. O. Ford,* for appellee.

MITCHELL, J.—This action was brought by the Eagle Cotton Mills Company, of Madison, Indiana, a manufacturing corporation organized under the general law of this State, to collect $4,000 alleged to be due from Charles L. Cravens upon a subscription made by the latter to the capital stock of the plaintiff. The facts are set out at great length, and in minute detail, in a special finding made by the court. Those material to present the questions for decision are the following: In November, 1883, a communication was presented to the Merchants and Manufacturers' Club, a voluntary association of the city of Madison, in which it was stated that the Eagle Cotton Mills Company, a corporation owning and operating two large cotton mills in the vicinity of Pittsburgh, Pennsylvania, with a view of transferring its business to this State, would sell all its machinery, including the good-will of its business, to an Indiana corporation, if one were legally organized. The price proposed was $100,000, of which amount $40,000 would be required to be paid in cash, and $60,000 in the capital stock of the new corporation. The scheme was regarded favorably by the club, and by the citizens of Madison, and the Eagle Cotton Mills Company, of Madison, Indiana, was duly organized and incorporated on the 13th day of November, 1883, the object of its formation being to acquire and own a cotton mill, and to engage in the manufacture of raw cotton into textile fabrics. The proposition theretofore made to the Merchants and Manufacturers' Club was under consideration when the Eagle Cotton Mills Company was organized, and while its stock was being subscribed for. The capital stock was fixed at $250,000, and was divided into shares of $25 each. The defendant was one of the incorporators of the company, an active promoter of the organization, and solicited subscriptions to its stock, and sub-

scribed for one hundred and sixty shares in his own name. It was stipulated in the contract of subscription that the several subscribers should pay for the number of shares set opposite their respective names upon the call of the board of directors, provided solvent subscriptions to the amount of $125,000, including $60,000 promised to be subscribed by the Eagle Cotton Mills Company of Pittsburgh, should first be obtained; and provided further, that the amount subscribed was not to be payable until the contract with the last named company, for the purchase of its mills, had been ratified by the votes of those holding a majority of the stock subscribed outside the city of Pittsburgh. It is found that solvent subscriptions for the required amount had been secured, and that on the 3d day of April, 1884, after considering various propositions from the Pittsburgh corporation and others, a contract for the purchase of substantially the entire plant, including the good-will of the latter corporation, had been executed. The Madison corporation agreed to pay the other $20,000 in cash, and to transfer $95,-000 of its paid-up capital stock as a consideration for the property, which was to be transferred and delivered to it at Madison, Indiana. It was also stipulated in the contract that the president of the Eagle Cotton Mills Company of Pittsburgh should be elected a director and president of the Madison corporation, and that a Mr. Townsend should act as secretary for the last named company, at a stipulated salary. This agreement was ratified on the day on which it was executed by the votes of those holding a majority of the shares of stock, at a stockholders' meeting regularly called. A location was obtained, mills erected and put in successful operation at Madison, Indiana. It is found that the defendant's subscription was accepted by the corporation, and that after the contract between the two corporations had been executed, but before it was ratified, the defendant gave notice to the plaintiff's board of directors that he withdrew his name from the subscription as a stockholder. The de-

fendant refused to pay any part of his subscription. The facts found and the conclusions of law thereon stated by the court, formed the basis of a judgment in favor of the plaintiff for the full amount of the subscription, with interest.

On the appellant's behalf it is contended that the contract of subscription was subject to two conditions precedent, viz.: "1. That $125,000 of solvent subscriptions, including $60,000 promised by the Eagle Cotton Mills Company of Pittsburgh, Pennsylvania, should be obtained; and 2. That the contract with the above named company for the purchase of its mills should be ratified by the votes of those holding a majority of the capital stock."

Conceding that the first condition had been fully performed, the appellant's position, as we understand it, is, that the second condition had not been performed, because the contract entered into with the Pittsburgh corporation, and ratified by the vote of the stockholders of the plaintiff corporation, was not the one made or contemplated by the parties and referred to in the contract of subscription, and that the defendant had, therefore, the right to withdraw his name as a subscriber. Moreover, it is said that the contract between the two corporations was, for various reasons, *ultra vires*, and void.

The court found that the contract which the stockholders of the Madison corporation ratified was not made until after the stock was all subscribed; that an arrangement of some kind was under contemplation at the time, but had not been definitely agreed upon, and that there was, in fact, no contract between the two corporations when the subscription was made.

The appellant assumes that the written contract of subscription shows that a definite contract existed for the purchase of the Pittsburgh company's mills at the time the subscriptions were made; that he subscribed for stock with reference to that contract, and that the finding of the court that there was no contract, rests upon a violation of the rule which

declares that parol evidence will not be heard to explain, modify, or contradict a written contract. This assumption is not warranted by the terms of the writing. While it is quite apparent that an arrangement of some kind was under contemplation at the time the subscriptions for stock were made, whereby the Eagle Cotton Mills Co. of Pittsburgh, might subscribe for $60,000 stock in the Madison corporation, and sell its mills to the latter, the plain inference is, that the final contract to that end had not yet been consummated. If a contract for the purchase of the mills had actually been executed, it would have been worse than idle to stipulate that no subscriptions to the stock should be collectible until after the contract had been ratified by a majority of the stockholders. It can hardly be conceived as possible that a contract was first made whereby the new corporation became bound to purchase the mills of the old, and that subscriptions for stock were afterwards taken subject to the condition that if the stockholders refused to ratify the contract, the subscriptions were to become uncollectible. The rule that a formal written contract, which appears upon its face to be complete, can not be enlarged, modified, or contradicted, by proof of prior or contemporaneous parol negotiations or agreements, is abundantly settled, and receives the fullest recognition in the decisions of this court. *Singer Mfg. Co.* v. *Forsyth*, 108 Ind. 334; *Carr* v. *Hays*, 110 Ind. 408; *Tucker* v. *Tucker*, 113 Ind. 272.

It is equally well settled, however, that the first duty of the court in interpreting a contract is to discover the intention of the parties, and while that must be done solely by considering the meaning of the language employed in the instrument, yet when the terms employed are susceptible of more than one meaning, it is the duty of the court, not only to regard the nature of the instrument, but also to inform itself of the circumstances which surrounded the parties at the time, so as to interpret the language employed from the standpoint which the parties occupied when they executed

the contract. *Daugherty* v. *Rogers*, 119 Ind. 254, and cases cited ; *Heath* v. *West*, 68 Ind. 548 ; *Ketcham* v. *Brazil, etc., Co.*, 88 Ind. 515 ; *Nash* v. *Towne*, 5 Wall. 689 ; *Scott* v. *United States*, 12 Wall. 443 ; *Canal Co.* v. *Hill*, 15 Wall. 94 ; *Reed* v. *Insurance Co.*, 95 U. S. 23 ; *Reynolds* v. *Commerce Fire Ins. Co.*, 47 N. Y. 597.

If the words of the instrument are clear in themselves, it must be construed accordingly, but if they are susceptible of more meanings than one, the court must avail itself of the light enjoyed by the parties when the contract was executed, so as to arrive at the meaning of the words, and give them a correct application to the persons and things described. *Springsteen* v. *Samson*, 32 N. Y. 703. Where the language employed admits of more than one construction, one of which renders the contract insensible, that construction will be adopted which will give effect to the contract; and, in cases of doubt, the practical construction which the parties themselves have given it will be of great, if not controlling, influence. *Reissner* v. *Oxley*, 80 Ind. 580; *Lyles* v. *Lescher*, 108 Ind. 382, and cases cited; *Chicago* v. *Sheldon*, 9 Wall. 50.

The relations existing between the Pittsburgh corporation and the plaintiff at the time the appellant subscribed for stock, were matters collateral to the contract of subscription, and in no manner affected, or entered into, the contract of the latter with the plaintiff. *Singer Mfg. Co.* v. *Forsyth, supra; Eighmie* v. *Taylor*, 98 N. Y. 288.

It was essential, however, in order that the contract of subscription might be intelligently applied to the collateral matters therein referred to, that the court should be informed of the relations existing between the two corporations at the time the subscription was made. It was therefore competent for the plaintiff, when the appellant claimed exoneration from his subscription on the ground that the contract between the two companies, in respect to the amount of stock which the Pittsburgh company had agreed to subscribe, or

the terms upon which it had agreed to sell its mills, had been changed, or that the agreement had been varied in any other respect, to show that no contract had, in fact, been consummated, and that the situation of the parties was such as to make it apparent that the contract referred to was one that might possibly be made in the future. This in no way tended to alter or modify the contract of subscription, but to give it intelligent application to the collateral matters to which it referred.

It is contended that one corporation can not sell its property and good-will to another, and that the agreement that the president of the one should be elected a director and president of the other, was invalid, and that the whole contract was therefore *ultra vires.* We do not deem it necessary to enter upon an examination of these questions. In the view we take, the stipulation in the contract of subscription by which the amounts subscribed were not to become payable until the contract for the purchase of the mills had been ratified, was in no sense a condition precedent to the liability of the subscribers for stock. As we have seen, that stipulation had reference to a matter wholly aside from, and collateral to, the contract of subscription. It was essentially an independent covenant, by which it was, in effect, agreed that no contract should be finally made for the purchase of the Pittsburgh company's mills without the consent of the majority of the stockholders. The Madison corporation in no way bound itself to purchase the cotton mills owned by the Pittsburgh company, nor was its absolute right to collect its stock subscriptions in any way conditioned upon the future purchase of those mills. If the Pittsburgh mills had never been purchased, or if after the contract of purchase was negotiated, it had been rejected by the stockholders, it would hardly be maintainable that the Madison corporation would have thereby lost its right to enforce payment of its stock subscriptions in order to carry out the purpose for which the corporation was organized. To give the contract

the construction contended for would enable the subscribers to withdraw all their subscriptions, and deprive the corpo-ration of its capital to such an extent as to disable it from conducting its business. *Pittsburgh, etc., R. R. Co.* v. *Biggar*, 34 Pa. St. 455 ; *Boyd* v. *Peach Bottom R. W. Co.*, 90 Pa. St. 169 ; Morawetz Corp., sections 92, 93.

Since it was not made a condition precedent to the appellant's liability that a contract with the Pittsburgh corporation of a specified character should first be made, he can not now defeat the collection of his subscription by assailing the contract that actually was made. He was content that the board of directors should exercise their best judgment in obtaining and agreeing upon terms of purchase, with the stipulation that his subscription should not become payable until the contract of purchase, if one was agreed upon, was ratified by a majority of the stockholders. This the court finds has been fairly done, and it is now too late to assail the contract in an action to collect the subscription price of stock. Thus it has been said :

"A subscriber for stock in a corporation can not defeat an action to collect such subscription by the defence that the directors or the corporation itself have done corporate acts which are beyond the corporate powers. There are other reme-dies open to the subscriber. He may either impair such *ultra vires* acts, or may have them set aside if already accomplished. * * * Thus it has been held that a subscriber can not defeat an action to collect his subscription by showing that the corporation has, without authority of law, and in excess of its powers, executed a lease or sale of the road ; or illegally issued its bonds ; or purchased shares of its own stock, or of another corporation ; or changed the location or route of the road. The last instance especially, has been a frequent defence, but has been uniformly discountenanced by the courts whenever the change is made, not by an amendment to the charter, but by the arbitrary, unauthorized act of the corporate authorities. * * *

" A stockholder can not defeat an action to collect his sub-scription by the defence that the corporate affairs have been managed fraudulently, or recklessly or negligently. The stockholder's remedy for such evils is of a different nature. For fraud, he may bring the guilty parties to an accounting. For mismanagement, his only remedy is the corporate elec-tions. In no case has he been allowed to escape liability on his subscription by reason thereof. Thus it is no defence that the corporate authorities fraudulently placed an over-valuation on property purchased by them for the corpora-tion ; nor that they made a fraudulent contract with a con-struction company." Cook Stock and Stockholders, sec-tions 187, 188 ; 1 Wood Railway Law, sections 43, 45.

These subscriptions are made to take stock in an existing or proposed corporation, upon a condition precedent, as for example, upon condition that a specified amount of subscrip-tions should thereafter be obtained. The contract of the sev-eral subscribers is two-fold in character. It is, in a sense, a contract between the several subscribers which can not be withdrawn or revoked as to any one without the acquies-cence of all. It is also a continuing offer or proposition to the corporation to take and pay for the amount of stock sub-scribed, upon the terms proposed, whenever the specified amount of subscriptions shall have been obtained. The ob-taining of the amount specified within a reasonable time is an acceptance of the proposition or offer by the corporation, and the contract of each subscriber then becomes absolute and unconditional. *Minneapolis, etc., Co.* v. *Davis*, 41 N. W. Rep. (Minn.) 1026 ; Morawetz Corp., section 47. A sub-scriber can not withdraw his subscription, even though it be conditional, unless unreasonable delay occurs in performing the condition. *Johnson* v. *Wabash, etc., Plank-Road Co.*, 16 Ind. 389 ; *Lake Ontario, etc., R. R. Co.* v. *Mason*, 16 N. Y. 451 ; *McClure* v. *Peoples', etc., R. W. Co.*, 90 Pa. St. 269.

When the plaintiff obtained solvent subscriptions for the amount specified, that became an effectual acceptance of the

offer of all those who had previously subscribed. Their subscriptions were no longer conditional, but they then became absolute, and were thereafter payable according to the terms of the contract on the call of the board of directors. *New Albany, etc., R. R. Co.* v. *Pickens,* 5 Ind. 247; *Esteel* v. *Knightstown, etc., Co.,* 41 Ind. 174; *Beckner* v. *Riverside, etc., Co.,* 65 Ind. 468; *Phœnix, etc., Co.* v. *Badger,* 67 N. Y. 294, 300. The subscribers thereupon became entitled to all the rights and privileges of stockholders, and they came under the correlative obligations and duties of holders of stock in a corporation. *Butler University* v. *Scoonover,* 114 Ind. 381; (5 Am. St. Rep. 627).

Questions of minor importance, involving the right of the plaintiff corporation to prosecute the suit in its own name, its power to make by-laws, and whether or not it was fully organized when the subscription in question was made, are presented in the briefs. It is sufficient to say, while these questions in no way affect the merits, we have considered them, and find no error in the record. Both parties having by entering into the contract sued on assumed the existence of the corporation, both are now estopped from denying it. *Whitney* v. *Wyman,* 101 U. S. 392.

The judgment is therefore affirmed, with costs.

BERKSHIRE, J., did not participate in the decision of this case.

Filed June 19, 1889; petition for rehearing overruled Sept. 20, 1889.