[Sac. No. 803.    Department One.— October 11, 1901.]

JOHN F. SNYDER, Respondent, v. HOLT MANUFAC-
TURING COMPANY, Appellant.

ACTION FOR PERSONAL INJURIES — DEFECTIVE BOLT AND NUT IN HAR-
VESTER — EXPERT EVIDENCE. — In an action for personal injuries,
caused by reason of the separation of a defective bolt and nut used
to connect the header and separator in a side-hill combined har-
vester, manufactured for and sold to the plaintiff by the defendant,
the question whether the bolt and nut were proper and sufficient
for the coupling together of the parts of the harvester is peculiarly
one for the evidence of a qualified expert, experienced in the con-
struction of such machinery for the purpose intended.

ID. — WRITTEN CONTRACT OF SALE — EVIDENCE — CIRCUMSTANCES ATTENDING SALE — INTENTION OF PARTIES. — The written contract of sale of the harvester may be explained by reference to the circumstances under which it was made, and the matter to which it relates; and evidence of the circumstances attending the sale is admissible to aid the court in arriving at the intention of the parties in the purchase and sale of a harvester manufactured by the vendor, of a peculiar build, and intended for a particular purpose.

ID. — WARRANTY OF HARVESTER — CODE PROVISIONS PART OF CONTRACT. — Where the contract expressly warranted the machines " to be made of good material, and durable with proper care," and the circumstances proved showed that the machine was manufactured and sold by the vendor for a particular purpose, the provisions of section 1769 of the Civil Code, warranting the sale of an article of the seller's manufacture " to be free from any latent defect, not disclosed to the buyer, arising from the process of manufacture," and of section 1770 of the same code, that " one who manufactures an article for a particular purpose, warrants by the sale that it is reasonably fit for that purpose " are applicable, and enter into and form part of the contract of sale.

ID. — QUESTIONS FOR JURY — NEGLIGENCE — CONTRIBUTORY NEGLIGENCE — PATENT DEFECT. — The questions whether the defendant was guilty of negligence in the construction and manufacture of the machine, and whether the defect was sufficiently patent to charge the plaintiff with contributory negligence, were questions of fact for the jury to determine, and not questions of law for the court, where different conclusions upon those questions might be rationally drawn from the evidence.

APPEAL from an order of the Superior Court of Stanislaus County denying a new trial.   William O. Minor, Judge.

The facts are stated in the opinion of the court.

Budd & Thompson, Maddux & Stonesifer, and C. A. Stonesifer, for Appellant.

W. H. Hatton, and Needham & Dennett, for Respondent.

VAN DYKE, J. — The action is for damages, alleged to have been sustained by the plaintiff by reason of the defective construction of a combined harvester manufactured and sold to the plaintiff and one Kniebes by the defendant corporation. The plaintiff and said Kniebes were farmers near Crows Landing, in Stanislaus County, in the spring of 1896.   By agreement between them, the plaintiff went to Stockton the latter part of April of that year, to make arrangements for a harvester

to be used by them. The defendant was at that time, and for many years prior thereto had been, engaged in manufacturing and selling combined harvesters. The plaintiff's land, as also that of his neighbor Kniebes, was hilly, and they wished to obtain a harvester that would operate upon a side hill, to cut grain growing on hilly ground. He met a Mr. Dickenson, secretary of the defendant company, who informed him that defendant was building a single-wheel side-hill combined harvester especially for cutting grain on hilly ground, and showed the plaintiff the separator of such single-wheel combined harvester. Later on, the plaintiff saw Benjamin Holt, president of the defendant corporation, and told him the kind of ground he wanted the harvester to operate on. Subsequently, May 4, 1896, Mr. Tuggle, agent of the defendant, came to plaintiff's place to see the ground the harvester was needed to harvest grain on, and said Tuggle stated that the machine would cut the grain growing on the land mentioned, but that there was a good deal of work yet to be done on the single-wheel side-hill harvester, but he thought it could be finished by May 20th, or a few days later. Thereupon plaintiff and his neighbor Kniebes signed a formal application for the purchase of said single-wheel side-hill harvester. About June 9, 1896, the harvester arrived by rail at Crows Landing, and, a day or two thereafter, was unloaded and taken to plaintiff's ranch, and said Tuggle, sent by defendant for that purpose, set up the harvester and started it to harvesting. It was first operated upon the farm of Mr. Kniebes. It was then taken to the plaintiff's field, and the grain was cut around the base of the hill on which the harvester afterwards broke down. Mr. Tuggle left on Tuesday, and the plaintiff took charge of the harvester and operated the same until the break. This was caused, it appears, by the header breaking loose from the separator, occasioned by a nut from the bolt connecting the two coming off, resulting in the separator tilting suddenly down-hill, throwing the plaintiff into the cylinder-house, where he was caught by the teeth of the cylinder, and his right leg was very badly lacerated and mangled, inflicting permanent injuries.

The action was tried by a jury, and a verdict awarded the plaintiff in the sum of two thousand dollars. The court below denied a motion for a new trial and the defendant appeals.

The appellant claims that the trial court erred in the admission of the testimony of the witness Ingersoll as expert

testimony, on the ground that it was not a case for expert testimony, but a question entirely for the jury, upon the facts whether there were defects or negligence in the construction of the harvester or not. The witness fully qualified himself as an expert. It was shown that he had had a large amount of experience in the construction and operation of harvesters, and his testimony was directed to the proper construction and sufficiency of the bolt and nut in question. It is also claimed that the nut examined by the witness Ingersoll was not shown to be the nut on the bolt at the time of the accident. He testified that he found the nut on the ground a few feet above where he found the separator, and it was argued that the nut could not roll up hill. But it appears that after the breakdown caused by the nut coming off, the separator rolled downhill. Besides, Mr. Tuggle, defendant's agent, found the nut and washer on the timber where Ingersoll had left them, and put them on the bolt, no question being raised at the trial that the nut found by Ingersoll was not the one in use on the bolt. In the case of *Kauffman* v. *Maier*, 94 Cal. 269, relied upon by the appellant, where it was held that expert testimony was improper, the court say: " An answer to the question did not involve the knowledge of any science or art, and was not the subject of testimony by an expert in machinery. The facts sought to be shown by the testimony did not involve a knowledge of the construction or working of machinery, or in any respect depend upon such knowledge." Whether the bolt and nut were proper and sufficient for the coupling together of the two pieces of machine in this case, were peculiarly questions for one experienced in the construction and manufacture of such machinery for the purposes intended. The case, therefore, is clearly distinguishable from those relied upon by appellant.

It is contended, also, that the court erred in allowing testimony in reference to previous negotiations, inasmuch as they were superseded by the written contract. This contract consists entirely in the written application for the purchase, signed by the plaintiff and his co-purchaser, Kniebes. The testimony shows that there were negotiations pending some time before the order for the machine, and that the agents of the defendant visited and inspected the ground of the plaintiff and Kniebes on which it was intended that the harvester should operate, and after the negotiations were completed,

having been assured by the defendant's agents that the machine in question would answer the purpose intended, the order was filled up by an agent of the defendant and signed by the purchasers. It reads: " Please ship to the undersigned one side-hill single-wheel combined harvester, fourteen-foot cut, with four-feet extension, complete with straw-dump and header-truck." And the form signed by the purchasers contains this agreement on the part of the manufacturer and vendor: " These machines are all warranted to be made of good material, and durable with proper care." The rule that the intention of parties is to be ascertained from the writing alone, where a contract is reduced to writing, is subject to other rules of law for the interpretation of contracts. " A contract may be explained by reference to the circumstances under which it was made and the matter to which it relates." (Civ. Code, sec. 1647.) It appears that this machine was one of a peculiar build, and intended for a particular purpose, and it was entirely proper to have all the facts and circumstances laid before the court, in order to arrive at the intention and understanding of the parties. " One who sells, or agrees to sell, an article of his own manufacture thereby warrants it to be free from any latent defect, not disclosed to the buyer, arising from the process of manufacture, and also that neither he nor his agent in such manufacture has knowingly used improper materials therein." (Civ. Code, sec. 1769.) Again, " One who manufactures an article under an order for a particular purpose, warrants by the sale that it is reasonably fit for that purpose." (Civ. Code, sec. 1770.) The facts in this case make these provisions of the law applicable, and they enter into and form a part of the contract of sale by the defendant in this case.

But it is contended that there was no negligence on the part of the defendant; that the defect, if any, was a patent one, of which the plaintiff could have taken notice. The question whether the defendant was guilty of negligence in the construction and manufacture of the machine, as well as the question whether there was contributory negligence on the part of the plaintiff, were issues made by the pleadings and submitted to the jury. " The rule is, that negligence is a question of fact for the jury, even when there is no conflict in the evidence, if different conclusions upon the subject can be rationally drawn from the evidence. This proposition has

been frequently declared by this court." (*Herbert* v. *Southern Pacific Co.*, 121 Cal. 227.) In support of the foregoing rule stated by the court, a large number of cases are cited. This same rule is stated in *Buchel* v. *Gray Brothers*, 115 Cal. 422, the court saying: "As has often been observed, the question of negligence is peculiarly for the jury. Even when the evidence is not conflicting, the verdict will not be disturbed, if different conclusions can reasonably be drawn therefrom." By the verdict of the jury it was found that the plaintiff's injury was not caused by his own negligence, but arose in consequence of the negligence of the defendant in the construction and manufacture of the machine sold to him, and it cannot be said that the jury were not justified in so finding, from all the facts and circumstances of the case.

Order affirmed.

Garoutte, J., and Harrison, J., concurred.

Hearing in Bank denied.