[Civ. No. 2011. Second Appellate District.—November 27, 1916.]

MRS. J. E. LICHTENTHALER, Appellant, v. SAMSON IRON WORKS (a Corporation), Respondent.

SALE OF PUMPING PLANT — ACTION FOR DAMAGES — BREACH OF WARRANTY—SUFFICIENCY OF COMPLAINT.—In an action to recover a sum of money as damages alleged to have been sustained through the failure of the defendant to furnish an engine and pump and erect the same as contracted for, the complaint states facts sufficient to constitute a cause of action for special damages, where it is alleged that the defendant had knowledge that the plaintiff intended to install a pumping plant, that the defendant made a written proposal, which the plaintiff accepted, to furnish and install a proper plant, and that the plant so furnished was defective both as to design and method and unskillfully installed, notwithstanding it

was also alleged that title to the plant was to remain in the defendant until full payment had been made therefor.

ID.—BREACH OF WARRANTY—SPECIAL DAMAGES—OWNERSHIP OF ARTICLE IMMATERIAL.—While it is true that where title is reserved in the seller of an article until full payment is made therefor, a breach of warranty by the seller will not entitle the buyer to recover general damages, he may recover any special damages which may have been caused him through breach of the warranty of his vendor.

ID. — WARRANTY OF FITNESS OF MANUFACTURED ARTICLE — WHEN IMPLIED.—Under section 1770 of the Civil Code, which provides that one who manufactures an article under an order for a particular purpose warrants by the sale that it is reasonably fit for that purpose, a warranty of fitness will be implied, where the vendor contracts with the vendee with full knowledge as to the particular purpose for which the article is to be used.

ID.—RETENTION OF PROPERTY—OPPORTUNITY TO REMEDY DEFECTS—WARRANTY NOT WAIVED.—The buyer's retention and use of the article beyond the stipulated time will not operate as a waiver of the benefits of the warranty when it was at the instance of the seller or his agent, or when it was for the purpose of giving the seller or his agent an opportunity to remedy defects.

APPEAL from a judgment of the Superior Court of Los Angeles County.   Paul J. McCormick, Judge.

The facts are stated in the opinion of the court.

Daniel M. Hunsaker, for Appellant.

Valentine & Newby, for Respondent.

JAMES, J.—Plaintiff brought this action to recover a sum of money as damages alleged to have been sustained through the failure of defendant to furnish an engine and pump and erect the same as contracted for.   A demurrer was interposed to the complaint, in which the general ground of objection was first stated that sufficient facts were not set forth to constitute a cause of action.   The complaint was also demurred to on the ground that it attempted to state two causes of action, and was ambiguous and uncertain for the same reason.   The superior court sustained the demurrer, and plaintiff declining to amend, judgment of dismissal followed. This appeal was then taken.

In the complaint it was alleged that about April, 1910, the plaintiff was the owner of certain real property in the county of Los Angeles on which she was residing and "on which, as defendant well knew and understood, plaintiff was desirous of, and intended, erecting and installing a pumping plant, for the purpose of obtaining water for domestic purposes and for the irrigation of certain trees and vines then planted and growing on said premises, and of trees and vines and crops to be planted, cultivated and grown by her on said premises." It is next alleged that about the same date defendant made a written proposal to her to furnish a gasoline engine with its fittings and accessories, also a vertical pump and its connections, together with an iron frame. The written proposal contained the following statement: "Foundation to be built by Samson I. Works per our plans, you to do all teaming and furnish all common labor. We furnish one competent man to assist in the erection of this engine and Samson Iron Works pay his traveling expenses to and from Stockton; you board and lodge him until his return to the depot. You haul him and his tools to and from depot. . . . We guarantee this engine to be well made, of good material, with best workmanship. We guarantee this engine against defective material and workmanship for one year." Further terms of the proposal required that the purchase price should be paid in installments, $150 down and $100 every three months with interest, and that title to the property should not be acquired by the vendee until it had been fully paid for, and that in default of payment as agreed, the vendor might take possession and remove the engine and pump, "and collect reasonable charges for the use of same." Plaintiff then alleged that before April 14, 1910, she accepted the proposal, and that on or about May 1, 1910, pursuant to the contract, defendant delivered to the plaintiff a gasoline engine and pumping plant and furnished a man to assist in the erection of the same on her premises; that the engine and plant were erected and installed under the direction and with the assistance of the man so furnished. It is then alleged: "That the man so furnished by defendant, for such purpose, was not competent, and that he erected and installed said engine and pumping plant in an unskillful and negligent manner. That said engine was not well made, or of good material, nor was it of the best workmanship, and said engine and pump-

ing plant were carelessly and unskillfully erected and installed by the man so furnished by defendant; and the plans and specifications for the foundation of said plant, as prepared by defendant, were faulty and defective. That by reason of the incompetency of the man so furnished by defendant to assist in the erection of said engine and pumping plant, and the unskillful and negligent manner in which he caused the same to be erected and installed, and by reason of the fact that said engine was not well made or of good material or constructed with the best workmanship, and by reason of the further fact that the plans and specifications for both the foundations of said plant, as prepared by defendant, were faulty and deficient, said engine and pumping plant did not work properly, the same failed to pump or lift water, and was in consequence thereof rendered valueless to plaintiff, to her damage in the sum of $2,281, as follows.'' The complaint proceeds in its statement of facts to set forth that the plaintiff, relying upon the warranties and representations of the defendant, did, during the spring of 1910, plant three acres of potatoes and one and one-half acres of onions, and four and one-half acres of fruit trees, with the expectation that the same would be irrigated with water to be raised by the pumping plant; that by reason of the failure of the plant to work, the trees and crops died, and she was damaged thereby in the sum of $1,550. She further alleged that at the time the plant was erected there were growing on the ground certain trees and vines which she had expected to irrigate with water to be raised by the plant, and that these trees died through the failure of the plant to raise water, and that she was damaged thereby in the sum of $398. It was then set out that she had paid on account of the purchase price, about May 18, 1910, the initial payment of $150; on or about August 22d, $102; on or about December 11th, $50; on or about January 25, 1911, $29; that in about May, 1911, the defendant, without the consent of plaintiff, removed, tore out, and took away the pumping plant. It was further alleged that many times after September 1, 1910, defendant had promised and agreed to replace and repair the engine and the defective parts thereof, and that the plaintiff, relying upon such representations and promises, did, in the spring of 1911, plant certain crops which failed to grow by reason of lack of water, and that she purchased certain seed and

caused ground to be specially prepared for particular crops, all of which failed because water was not produced from the pumping plant with which to irrigate them. It may be noted here that the pump was installed about the 1st of May, 1910, and that the plaintiff was not in default as to her payments until November of the same year. According to the allegations of her complaint, the pumping plant never did work properly by reason of the unskillful installation thereof and by reason of deficiency in workmanship and material of the engine.

Respondent, in support of its demurrer, alleges, first, that no action can be maintained on the warranties of the defendant because, by the contract, no title would pass to the vendee until full payment had been made. It is also contended that under the facts alleged there was no implied warranty of the fitness of the machinery to do the work had in view by the plaintiff, and that therefore the special damages which she alleges to have suffered cannot be recovered. It is true that where title is reserved in the seller, a breach of warranty by the latter will not entitle the other party to recover what are termed ''general damages.'' This is not because no actionable injury has been caused by the breach, but because the rule as to the measure of damages applicable to such a case does not apply, to wit, the difference between the value of the machinery as fixed by the contract of sale and its actual value at the time. This proposition is well stated in *New Hamburg Mfg. Co.* v. *Webb*, 23 Ont. Law Rep. (Can.) 44, where the court said: ''No one, in short, can be injured by a diminution in value, simply, of a chattel, until he owns it; but he may be injured by the failure of a machine to do the work he wants it for, no matter who owns the machine. . . . The purchaser says to the vendor, 'You furnish me a machine to do a certain kind of work and with a warranty the implementing of which implied the capacity of the machine to do the work— the machine will not do the work, and I have lost money thereby.' It would be no answer for the vendor to say, 'It is not your machine; it is mine.' The purchaser would say, 'What of that? You furnished me with the machine and warranted it to do my work—it is of no importance whose machine it is,—yours, mine, or a third person's.' And he would be right.'' In that case damages were allowed of a special nature, which included the loss of three seasons' profits occasioned by the engine furnished not developing the

capacity contracted for or warranted. Section 1770 of the Civil Code provides that ''One who manufactures an article under an order for a particular purpose, warrants by the sale that it is reasonably fit for that purpose.'' Under the provisions of this section, it is well established that a warranty of fitness will be implied where the vendor contracts with the vendee with full knowledge as to the particular use to which the article contracted to be sold is to be put. Such was the condition of fact in *Snyder* v. *Holt Mfg. Co.*, 134 Cal. 324, [66 Pac. 311], and in *Luitweiler etc. Co.* v. *Ukiah etc. Co.*, 16 Cal. App. 198, [116 Pac. 707, 712]. In the case first cited the written order given for the harvesting machine contained an agreement on the part of the manufacturer and vendor in the following terms: ''These machines are all warranted to be made of good material, and durable with proper care.'' The supreme court there declared that because of the circumstances of the case under which it appeared that the machine was ordered for a particular purpose, and that the vendor had knowledge of the special purpose for which it was desired to be used, an implied warranty arose under section 1770 of the Civil Code, for the protection of the vendee. Damages such as those in the main alleged in plaintiff's complaint may be recovered where such a warranty exists. We quote from Mechem on Sales, volume 2, section 1756: ''But there may be cases in which the buyer had in view such a special or unusual use or purpose that this mere difference in value will not measure it. If he had, two conditions will suggest themselves: Did he keep that peculiar use or purpose to himself, so that the seller had no intimation that any other than the ordinary consequences would ensue? Or did he, or did the circumstances, so fully disclose this special or unusual purpose that the seller may fairly be said to have had in his contemplation when he made the contract the losses which might accrue as a probable result of his breach of his agreement?'' We find no established rule which will prevent a vendee who has not obtained title to the property sold from prosecuting an action to recover any special damages which may have been caused him through breach of the warranty of his vendor. While it is shown by the complaint that plaintiff was in default as to payments to be made on account of the purchase price, it also appears that she had committed no default prior to the first breach of the defendant as to its

warranty. She alleged that the entire plant was defectively constructed, both as to design and method; that the engine was not of the material and workmanship guaranteed, and that the plant would not pump water. This condition, it would appear as a proper inference to be drawn from the complaint, existed from the time of the installation of the machinery. The complaint, in our opinion, clearly states a good cause of action for some amount of damages, and that being true, the objection made by the general demurrer is answered against the contention of respondent.

The second objection raised by the special demurrer is that two causes of action are attempted to be joined, in that promises alleged to have been made by the defendant after September, 1910, that it would replace and repair the defective pumping plant, constituted a different cause for damages than that furnished by the breach of the original conditions stated. We think that this position is not correctly taken, and that the allegations last referred to are proper to be considered only as showing a reason for the continuing damage which is alleged to have resulted to the plaintiff, and for the further reason, as is stated in *Luitweiler etc. Co.* v. *Ukiah etc. Co.,* 16 Cal. App. 198, [116 Pac. 707, 712] : "The buyer's retention and use of the article beyond the stipulated time will not operate as a waiver of the benefits of the warranty when it was at the instance of the seller or his agent, or when it was for the purpose of giving the seller or his agent an opportunity to remedy defects." (Citing 30 Am. & Eng. Ency. of Law, p. 188.) While the complaint might have been more concisely drawn in its statement of the facts, we think that it contained sufficient to render it unobjectionable to the demurrer, and that the special damages alleged were such as might under sufficient proof be recovered, measured by the rule prescribed by section 3314 of the Civil Code.

The judgment is reversed.

Conrey, P. J., and Shaw, J., concurred.