[Civ. No. 578. Fourth Appellate District.—January 14, 1932.]

THE STARR PIANO COMPANY (RICHMOND, IN-DIANA), PACIFIC DIVISION (a Corporation), Appellant, v. WILLIAM MARTIN, Respondent.

William Ellis Lady for Appellant.

James A. Hall for Respondent.

LAMBERT, J., *pro tem.*—The plaintiff (appellant in this court) The Starr Piano Company (Richmond, Indiana), Pacific Division, a corporation, brought this action to recover the installments alleged to be due from the defendant William Martin (respondent in this court) on a conditional sales contract executed by plaintiff and defendant for the purchase of one No. 2 Gennett synchronizer unit complete designed for use in connection with Simplex projection machines. The respondent denied that anything was due· on the contract for the reason that appellant had not performed the conditions of the contract and also filed a counterclaim for $1500 damages on account of the alleged breach. The trial court entered judgment in favor of the respondent as to the complaint and also gave judgment against the appellant on respondent's counterclaim for the sum of $500. The appellant prosecutes this appeal from the judgment and order denying his motion for a new trial under section 953a of the Code of Civil Procedure and brings up a typewritten record.

The appellant urges several reasons for a reversal of the judgment. ██ The first contention is that the judgment against the plaintiff on the complaint is not supported by the findings of fact and conclusions of law. This point is not well taken for while the judgment contains some surplusage the statement that the plaintiff, naming it, take nothing by reason of its action is sufficient as a judgment in favor of defendant and is supported by the findings. The rest of the particular part of the judgment to which objection is made may be disregarded.

As to the findings supporting the judgment, it is said in *Needham* v. *Chandler*, 8 Cal. App. 124, at 128 [96 Pac. 325, 327]:

"The object of findings is to determine such issue or issues. Findings should be so construed as to support the judgment where it can be done. If apparently inconsistent, they should be reconciled, if reasonably possible to do so. If upon an immaterial issue, they should be disregarded. If, taking them as a whole, in view of the entire record, they fairly dispose of the material issues raised by the

pleadings on which evidence was offered, the judgment will be upheld.''

The next contention of appellant is that if the judgment is supported by the findings of fact and conclusions of law then the said findings of fact are not supported by the evidence but are contrary thereto, and this seems to be the principal point to the appeal. The only evidence printed in the brief of appellant is the contract upon which it brought suit. The contract is quite long and only the pertinent parts thereof will be quoted to wit:

''Standard Sales Contract for Gennett Synchronizer Systems.

''Conditional Sales Agreement made and entered into this 29th day of April, 1929, by and between The Starr Piano Company (Richmond, Indiana) Pacific Division, a corporation having its principal office at Los Angeles City, Calif. State, hereinafter designated as 'Seller' and William Martin of Hemet City, California State, hereinafter called the 'Purchaser'. Witnesseth:

''1. The seller hereby agrees to sell, and the undersigned purchaser hereby agrees to purchase, and does hereby purchase, subject to the terms and conditions hereinafter set forth, the following equipment designed for use in connection with Simplex projecting machines.

''One #2 Gennett Synchronizer Unit Complete

''2. The Purchaser agrees to pay the Seller, or its assignee at its office in Los Angeles, Calif., as the purchase price for said property the sum of Two Thousand Two Hundred Five Dollars ($2205.00) payable as follows: $500.00 in cash, the receipt of which is hereby acknowledged, and the balance of Seventeen Hundred Five Dollars ($1705.00) in equal payments of $170.50 each until the whole of said balance is paid, the first of such installment payments being payable within Thirty days after the installation of said equipment shall have been completed and the equipment made available to the Purchaser as ready for public exhibition, and each thirty days thereafter. . . .

''9. Purchaser agrees to have available for use by the Seller when installation of said equipment is to commence, all wiring connections, outlets, switches, etc., at *paoint* conveniently located within the area of enclosures where said equipment is installed. In the event that the foregoing outlets, switches, connections, etc., as detailed in this para-

graph are made available to the seller, the Seller agrees that at the expense of the Purchaser, the cost of the installation shall be as follows: The Seller agrees to furnish one engineer who is to be paid by the Purchaser a salary of $10.00 per day plus expense at point of installation together with railroad fare and other traveling expenses from the place of residence of said engineer or from place as he may be required to leave for the point of installation with the state of . . . In this connection it is provided that the purchaser will be furnished with a diagram and instructions as to wiring requirements in connection with such installation in advance thereof and Purchaser agrees to follow such instructions in preparing in advance the point at which such instruction is to be made. It is agreed that all of said equipment shall be shipped to the purchaser F. O. B. Factory, or any place from which the said equipment may be shipped. . . .

"12. The Seller warrants that such equipment shall be free from defective material and/or workmanship and agrees to replace any part or parts proving defective within ninety days after installation, provided that Purchaser shall give prompt notice to Seller of any defect and shall afford the Seller full opportunity to test and examine same. This warranty shall not apply to vacuum tubes used in this equipment. The Seller shall be under no obligation to replace any defective parts if Purchaser shall be in default in the performance of any of the conditions of this agreement."

The court found the due execution of the contract by the parties to the action; that the defendant paid the plaintiff $500 upon the purchase price on the execution of the contract, and that the defendant had in every particular complied with all the terms and conditions of the contract as to him and further found in findings Nos. III, V, VI, and VII:

"III.

"It is true that the plaintiff attempted to install the said equipment as provided in said agreement. It is true that said equipment has not been properly installed, nor has the said installation been completed. It is true that said equipment was not properly installed; that the installation was not completed; It is true that said equipment

was not made, and has never been made available to defendant as ready for public exhibition."

"V.

"It is true that after numerous attempts, plaintiff was unable to so install and/or correct said machinery as to comply with the terms of said agreement to be complied with by it.

"VI.

"It is true that by reason of the unsatisfactory manner in which said equipment functioned and by reason of its unavailability for public exhibition, on or about the 28th day of July, 1930, defendant disconnected said equipment from his projecting machines and thereafter, after due notice to plaintiff, held the said equipment subject to plaintiff's order and was unable to and did not further use the same.

"VII.

"It is true that, by reason of the failure of plaintiff to properly install said equipment and to complete such installation and to make said equipment available to defendant so as to be ready for public exhibition, defendant has been damaged in the sum of Five Hundred Dollars ($500.00), no part of which has been paid."

■ From finding number III it will be noted that the equipment was not made and has never been made available to defendant as ready for public exhibition. Paragraph 12 of the contract contains an express warranty from defective material or workmanship. The appellant contends, on the authority of such case as *United Iron Works* v. *Outer Harbor Dock & Wharf Co.*, 168 Cal. 81 [141 Pac. 917], and other cases, that where a writing contains an express warranty, this warranty may not be enlarged or added to by parol. This is correct so far as the law is concerned, but we do not believe in this case anything was added to the language of the contract, or the contract attempted to be changed by the testimony. It will be noted by the second clause of this agreement that it provides the first of the installment payments fixed by the contract shall begin within 30 days after the installation of said equipment shall have been completed *and the equipment made available to the purchaser as ready for public exhibitions* and each 30 days thereafter. The guiding star in the con-

struction of a contract is to take the contract by the four corners and arrive at the true intention of the parties, and while his intention must of course be determined from the language of the contract yet where the language is susceptible of different constructions it is proper to take into consideration the situation of the parties and the object to be accomplished. (*Bonslett* v. *Butte County Canal Co.*, 18 Cal. App. 149 [122 Pac. 821]; *Eldridge* v. *Mowry*, 24 Cal. App. 183 [140 Pac. 978].) In this case the defendant was changing his silent pictures to talking pictures and irrespective of the question of whether the warranty in clause 12 of the contract would be broad enough alone to cover the contention of the defendant we think that a true construction of clause 2 of the agreement, together with clause 12, compels us to hold that the equipment installed was to be reasonably satisfactory for public exhibitions of talking pictures and until that had been accomplished under the plaintiff's own contract there would be no installments due. It is admitted that the equipment was installed on May 12, 1929. The evidence shows that the first demand for payment was made on August 9, 1929, just two or three days before the equipment was discarded by the defendant, and almost 90 days after the installation of the equipment. The evidence also shows that almost continuously between the time of the installation and this latter date the defendant was in touch with the agents of plaintiff and they were endeavoring in every possible way to make this equipment work satisfactorily but with no success. From the conduct of the plaintiff it is quite evident that it was not expecting the payment of any installments until the equipment was working with some degree of satisfaction, and that the mere installation of the equipment was not intended to fix the due date of an installment payment. As said in *Rockwell* v. *Light*, 6 Cal. App. 563, at 565 [92 Pac. 649, 650]: "'When the meaning of the language of a contract is considered doubtful, the acts of the parties done under it afford one of the most reliable clews to the intention of the parties.' (*Hill* v. *McKay*, 94 Cal. 5 [29 Pac. 406]; *Mulford* v. *Le Franc*, 26 Cal. 108; *Cravens* v. *Eagle Cotton Mills Co.*, 120 Ind. 6 [16 Am. St. Rep. 298, 21 N. E. 981].)"

Furthermore, in a sale such as this there would be an implied warranty that the equipment which was con-

tracted to be sold for a particular purpose, of which the proposed seller had full knowledge, was reasonably fit for such purpose. (Sec. 1770, Civ. Code; *Lichtenthaler* v. *Samson Iron Works*, 32 Cal. App. 220, at 225 [162 Pac. 441]; *Snyder* v. *Holt Mfg. Co.*, 134 Cal. 324 [66 Pac. 311].) There is nothing in the cases cited by appellant on this point holding to the contrary.

▮ Appellant contends under clause 9 of the contract that the defendant was to install the equipment and while it is true he was to pay for the installation and furnish the facilities, the plaintiff furnished the engineer who did the installing and we think that the plaintiff was responsible for the results obtained by the installation of the equipment. Also the mere fact that the contract provided for the delivery of this equipment f. o. b. at a place other than where it was installed is of no significance in the interpretation of the contract as it only meant that the defendant would have to pay the freight or expense, to point of delivery. ▮ The evidence of the defendant showed that the machine was not at all satisfactory. Just a very brief *résumé* of some of the evidence in the record shows this quite conclusively. The defendant testified that it had a grating sound; the voices were distorted; the machine would vibrate and go out of synchronization and tear the machine picture heads and loosen them; they never did take out the vibration; the machines were continually out of alignment; the "Desert Song" went out of synchronization on every performance; the voices were not clear; in "Abie's Irish Rose" it was noisy and scratchy and went out of synchronization. There was testimony by other witnesses to the same effect. This condition existed for practically the whole time that the equipment was used.

The plaintiff attempted to show that there was no defect in the equipment or workmanship and also that it was the fault of the acoustic properties of the playhouse, but the defendant afterward installed other equipment and it was satisfactory.

While this is a very small part of the testimony, it is sufficient to show that finding number III is supported by the evidence. ▮ It is settled law that where there is any substantial evidence to sustain findings of fact by a trial

court they will not be disturbed on appeal (*Quatacker* v. *Hutton,* 108 Cal. App. 606 [292 Pac. 140]). All conflicts or seeming conflicts in evidence must be disregarded (*Fowler* v. *Carmel Cattle Co.,* 83 Cal. App. 317 [256 Pac. 609]). This finding number III, as well as the other findings, being amply supported by the evidence, we believe disposes of this branch of the case.

Appellant also contends that if it cannot recover on the contract it should have had a judgment for the reasonable value of the use of the equipment during the time it was in the playhouse. The answer to this is that there was no claim for the reasonable use in the complaint. That is, no issue made by the pleadings, therefore no pleading to support any such judgment (*Simmons* v. *Simmons,* 166 Cal. 438 [137 Pac. 20]; *Pendell* v. *Warren,* 76 Cal. App. 33 [243 Pac. 707]).

Appellant makes one other point, namely, that the judgment for $500 against the plaintiff on the counterclaim of defendant is not supported by the pleadings or evidence. With this contention we agree. The only damages which were attempted to be pleaded were neither properly pleaded or proved. There was no rescission or attempt at rescission by the defendant or abandonment by the plaintiff and the amount which had been paid on the purchase price is not the proper measure or any measure of damages under the circumstances here. Sections 3313 and 3314 of the Civil Code, in force at the time this action was brought, and which govern, are:

"3313. Breach of warranty of quality of personal property. The detriment caused by the breach of a warranty of the quality of personal property is deemed to be the excess, if any, of the value which the property would have had at the time to which the warranty referred, if it had been complied with, over its actual value at that time.

"3314. Breach of warranty of quality for special purpose. The detriment caused by the breach of a warranty of the fitness of an article of personal property for a particular purpose, is deemed to be that which is defined by the last section, together with a fair compensation for the loss incurred by an effort in good faith to use it for such purpose."

The correct rule as to pleading the damages is laid down in the case of *Harron, Rickard & McCone* v. *Wilson, Lyon & Co.*, 4 Cal. App. 488, at 498 [88 Pac. 512, 516], as follows:

"The measure of damages which is prescribed by section 3314, Civil Code, for a breach of warranty of the fitness of an article of personal property for a particular purpose, is not to be confounded with the mode of pleading in an action to recover the damages for such breach. In such action the claimant must set forth in his complaint the facts which the section prescribes as the basis for measuring the damages. The 'excess of value' which the property would have had, and the 'loss incurred' in an effort to use the property which was received, are facts which must be alleged, or the complaint will fail to show that the claimant is entitled to the recovery of such damages." (See, also, *Lichtenthaler* v. *Samson Iron Works*, 32 Cal. App. 220, at 226 [162 Pac. 441].)

In this connection it may be said that this so-called counterclaim, so designated herein because so named in the pleadings, is in reality a cross-complaint. As was said in *Pickwick Stages* v. *Board of Trustees*, 189 Cal. 417, at 419 [208 Pac. 961, 962]: "The question whether it (the pleading) is a cross-complaint or counterclaim must be determined by the court from its allegations and not from the designation given to it by the party." The defendant is not foreclosed, by reason of having called this pleading a counterclaim, from any benefit he might be entitled to by virtue of it (*Zarillo* v. *Le Mesnager*, 51 Cal. App. 442, at 444 [196 Pac. 902]), although he would be estopped to raise any point that it had not been answered (*McAbee* v. *Randall*, 41 Cal. 136, at 138).

However, this cross-complaint contains not a single allegation of fact which would support damages in any sum. The only complete allegation is that defendant paid the plaintiff the sum of $500 on the purchase price of the equipment. The next allegation is that he expended $500 getting his theater ready and in condition for such installation, in labor and equipment. There is no allegation of the value of the salvage in this, so that the loss, if any, can be ascertained. The next and only other allegation is that defendant was damaged in the sum of $500 "in that the

public at Hemet, California, would not patronize said theatre''. This is not even a direct charge that the public would not visit said theater, but so construed, after judgment, leads nowhere. How many people are in Hemet? How many usually attended before and since this equipment was installed? Purely a conclusion of the pleader as to damages, and absolutely devoid of any statement of fact from which damages would result. The pleading, by whatever name called, stated no cause of action against plaintiff. (21 Cal. Jur., p. 84; *Harron, Rickard & McCone* v. *Wilson, Lyon & Co., supra.*) The trial court made no attempt to find on these vague and insufficient items of damages and we have already shown that finding number VII is not supported by the evidence. It follows that this judgment against plaintiff cannot stand.

The judgment on the complaint in favor of defendant is affirmed. The judgment for $500 in favor of defendant against plaintiff on the cross-complaint (designated a counterclaim in the pleadings) is reversed and the defendant allowed to amend the pleading on such terms as the trial court may require, if so advised; neither party to recover costs on this appeal. The appeal from order denying motion for new trial is dismissed.

Barnard, P. J., and Marks, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on February 10, 1932, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on March 14, 1932.