## C. F. HODGMAN

### v.

## THE STATE LINE AND SULLIVAN RAILROAD COMPANY.

*Sales—Warranty—Breach of—Measure of Damages—Whether Equal to Warranty not Determinable by Inspection—Vendee not Required to Reject Immediately after Inspection.*

1. Certain coal was sold with certain warranties as to its qualities, and a part of the coal was received and inspected some time before it was needed for use; but where the qualities warranted were not such that it was possible to determine by inspection whether or not the coal was equal to the warranty, *held,* that the vendee still had the right, after such inspection, to rely upon the warranty, both in respect to the coal received and as to future deliveries.

2. Upon a breach of warranty the damages recoverable are the damages for the loss and injury which are the natural and proximate result of the breach. In ordinary cases, the rule of difference between actual value and what the value would be if the goods were as warranted, affords such compensation; but if there is additional trouble and expense, not compensated for by that rule, which are the natural and proximate result of the breach, damage therefor should be allowed.

3. The vendee of coal, a retail dealer, had sold coal to his customers, relying on the vendor's warranty, and because the coal did not correspond with that warranty, was obliged to refund the price and remove the coal. *Held,* that the expense of delivering and removing the coal was a part of his damages recoverable.

4. It was not necessary for the vendee, in the case presented, to produce upon the stand every party to whom he had sold and delivered coal, so that he could be examined as to the quality of each particular lot of coal and how it was tried, the evidence of both parties being general as to the quality of the coal, and there being no claim that there was a difference in quality in different portions of the coal.

5. Upon the case presented, there was no error in refusing to allow the vendee to prove the loss of profits in his business, there having been no existing contract of resale at an advanced price, of which the vendors knew.

6. The difference between the contract price of a warranted article and the actual market price of the same, where the warranty is not complied with, does not afford the true measure of damages.

[Opinion filed December 12, 1892.]

APPEAL from the City Court of Aurora, Illinois; the Hon. R. P. GOODWIN, Judge, presiding.

Messrs. HOPKINS, ALDRICH & THATCHER, for appellant.

The rule established by Story, in his work on Sales, is this: "He may recover the difference between the actual value of the article sold, with all its vices and defects, and that of an article, such as the article sold was warranted to be, at the time and place of sale. This rule has no necessary reference to the price paid for the goods. If the vendee sustains other additional injury, which is either the immediate consequence of the failure of the vendor to perform his contract, or a natural incident thereto, he may recover damages therefor. * * * So, also, where an article has been sold with warranty, and the buyer relying thereon, afterward re-sells it with a similar warranty to a third person, who brings an action thereon against him and recovers damages and costs against him, the sum paid as damages on the judgment is *prima facie* evidence of the amount which such buyer can recover of his vendor, and such buyer may also recover of his vendor the costs paid to such third person." (Sec. 454.)

If in the last case cited by Story the judgment and costs were a proper element of damage, then why should not the expenses of appellant in removing the coal from his customers' cellars and replacing it with other coal, be a proper element of damage? Should appellant be required to allow the coal to remain in his customers' cellars until they sued him for damages before he could have redress? It is not to appellee's interest to contend that such is the law.

From the language of our own Supreme Court in the case of Phelan v. Andrews, 52 Ill. 486, we quote the following:

"It is next objected that the court below misdirected the jury as to the measure of damages; that the recovery for loss of time, and the expenses of repairing the boilers, and the increased quantity of fuel necessary to run the mill were remote damages, and not properly recovered. In this case the warranty was that the work should be first class; and if,

when applied to use, it proved defective, and the boilers leaked, or if they required more fuel to generate steam than such boilers, when properly constructed, usually do, then the warranty was broken, and the rule of law is, that appellees were entitled to recover all damages which were the natural and proximate result of the breach of warranty, and it is clear the expense of repairing them, and the loss of time while so engaged, would be both natural and proximate. In such case the reasonable value for the use of the boiler, lost by its standing idle during the time the repairs were being made, would be proximate." This principle was approved in the case of Strawn v. Cogswell, 28 Ill. 457.

In the case of Ford v. Ill. Refrigerating Car Co., 40 Ill. App. 222, this court held that evidence was admissible on the part of the defendant going to show the amount lost by him in meats injured because of the high temperature in a refrigerator purchased, during the time of its use, and by reason of the leakage of ammonia upon them.

The Wisconsin courts have held a like rule to be the law: " The rule of damages is the difference in value between the machinery furnished and that called for by the contract, adding thereto the expenses which the vendee has actually incurred in his business as a consequence of the failure of the defendants to perform their contracts, which would include the wages and board of the officers and crew for the time they necessarily remained idle during the delay in furnishing the machinery, and during the time lost by breakages while testing the same, and during such reasonable time as was required for repairing it, and for procuring new and suitable machinery in its stead." Fisk v. Tank, 12 Wis. 306.

In a late Massachusetts case a machine was purchased of an English manufacturer to do a particular class of work, which it failed to do, and it appeared that plaintiff made some alterations and changes in the machine in the attempt to make it work, and it was held in an action by the buyer against the seller for a breach of an express warranty, that expenses incurred by the buyer in a reasonable but unsuccessful attempt to adapt it for the purposes contem-

plated, could be recovered. The warranty, by the way, referred to, was in a letter, which stated : " You may rely upon having a first rate machine, which will do your work in a satisfactory manner." Whitehead v. Ryder, 139 Mass. 366.

We find a case directly applicable in the 12 Ill. App. 365, the case of W., St. L. & P. R. R. v. Lynch. The court says : " The measure of damages in this case would be the difference between the value of the trees if they had been delivered, and their value in the damaged condition at the time of delivery. But, as the evidence shows there was no market value, it was proper for the jury to consider the cost at the place of shipment, add the freight and the difference between the sum received, deducting from the sum so received the expense of appellee, including his time in disposing of the trees."

Mr. M. O. SOUTHWORTH, for appellee.

In Hanson v. Busse, 45 Ill. 496, the court lays down the rule that the vendor of goods, which the purchaser has, at the time of purchase, the opportunity of examining, is not responsible for defects in quality, in the absence of fraud and warranty; and although no particular form of words is requisite to constitute a warranty, yet a simple commendation of the goods, or a representation that they are of a certain quality, does not make a warranty, and that as to that, the facts and circumstances in the case must all be taken into considera- tion. See, also, Kohl v. Lindley, 39 Ill. 195.

Authorities might be multiplied indefinitely, but the rule is plain, and the facts in this case bring it fully within the rule.

The general rule in cases of this character is, that where the debtor has been guilty of no fraud or bad faith, he is liable only for such damages as were contemplated, or as may be supposed to have been reasonably contemplated by the parties at the time of the contract. See Frazer v. Smith, 60 Ill. 147; Hayes v. Moynihan, 52 Ill, 423; Will- iams v. Case, 79 Ill. 356; Phillips v. Dickerson, 85 Ill. 11.

This instruction is also misleading, inasmuch as it would give the jury the right to not only inquire into prospective profits, but anything else in the way of the loss of customers and prestige, *ad infinitum*. To make it presentable it should have specified in what manner, and the character and kind of damage sought.

The third refused instruction is not even claimed to be the law applicable by the attorney for the appellant.

All the other instructions refused were of the too general and omnibus order; and the instructions given for the appellant correctly set forth the law, and gave him every advantage that he was entitled to thereby.

A point is made that the instructions of the defendant that were given to the jury were not marked "Given" at the time they were so given. This, of course, was an oversight on the part of the court, but that is not such error as will reverse. See Cook v. Hunt, 24 Ill. 536; Tobin v. The People, 101 Ill. 121.

The marking of instructions is more to assist the clerk in keeping a correct record than for any other purpose; it has no bearing whatever except for such purpose, as they are read to the jury and delivered to them as the law, and the jury are not supposed to know matters of law to such a nicety that they should take notice of such a minor matter.

MR. JUSTICE CARTWRIGHT. Appellee brought this suit against appellant to recover the contract price of coal sold and delivered to appellant. The general issue was pleaded, and it was stipulated that all defenses should be admissible under that plea. The defense made on the trial was that the coal was warranted to be of a certain kind, and to have certain qualities as a fuel; that it was not of the kind and did not possess the qualities warranted, and that appellant suffered damage on account of the breach of the warranty. There was a verdict for appellee for $535.14, from which appellee remitted $55.21, which is said to have been included in the verdict as interest. A motion for a new trial was overruled, and judgment was entered for $480.

It appeared from the evidence that appellant was a dealer in coal at Aurora, Illinois, and wrote to appellee August 20, 1890, for the price of anthracite coal delivered at that place. Appellee replied from Towanda, Pa., August 28, 1890, offering to deliver free burning anthracite (Bernice coal), on cars at Aurora, for $6.10 per gross ton, all sizes. It was further stated that circulars were inclosed which would tell all about the coal, and the letter closed with this statement: " Our coal is of a dull luster, but no better coal for domestic coal in the market; when people once use it they like it, but the appearance is against it, as it is of a dull look." Circulars were inclosed as stated for the purpose of telling all about the coal, and they stated, among other things, that it was one of the most economical of all anthracite coals. for domestic and manufacturing purposes; that if properly used by regulating drafts it would do as much work, either in heating or evaporating as the hardest of anthracite coals; that when fully ignited there would, by closing the drafts, be quick heat and lasting qualities; and that the coal was one of the purest and best anthracites in the market. To said letter of appellee, the appellant replied August 30, 1890, stating that he could use twenty-five to thirty cars, provided it would suit the trade, and ordering four cars of different sizes. He further stated that it would be understood that his order was in for the number of cars mentioned, provided the sample cars proved satisfactory. Appellee made shipments of coal September 5, 9 and 10, 1890, four cars in all, and they were received by appellant about the middle of September. After the receipt of some of the coal, appellant wrote on September 19, 1890, to appellee, concerning an alleged shortage in weight, and stated that the color was against the coal, but that he believed it good and ordered three cars more. Appellee replied September 23, 1890, concerning the shortage, and saying: " We have booked you for two cars more." The last car sent was refused by appellant, and he wrote appellee October 11, 1890, objecting that the coal went to pieces in handling, and saying that complaints were coming in about it. This letter was received by appel-

lee from the Dead Letter office about the last of October, 1890. Appellant paid the freight on the coal received, amounting to $331.57, to apply on the purchase price.

It will be apparent, from the foregoing, that there were representations made by appellee concerning the coal fulfilling all the conditions of a warranty, but it is contended that appellant had no right to rely upon such warranty after an inspection of the sample cars, and therefore he would not be entitled to prove any damage on account of the coal being different from the representations. It will be observed that the first coal was received in the early fall. Appellant testified that it was six weeks afterward that any of it was used by him or to his knowledge. The last order was given when the first was received, and before it had been tried. Appellant made no order for the coal after there was a test of its qualities in use for fuel. There had been no other test applied than the mere appearance, and the coal corresponded with the representation in that regard. In making the last order appellant said that the color of the coal was against it; but the warranty was that while that was true, still the coal had the other qualities stated. Appellant was assured that when people used it, they liked it. Manifestly he could not tell from the mere inspection what its heating or lasting qualities were, whether it was economical in use, or whether it would do as much work in heating or evaporating as the hardest anthracite coals. In order to protect his rights he could only rely upon the warranty that these qualities would appear in the use of the coal, especially when the statement expressly showed that its good qualities would not appear from inspection. Appellant was not debarred from relying upon the warranty of inherent qualities which could only become manifest by time and use, merely because he had seen some of the coal.

In the exercise of his right to show a breach of the warranty, appellant testified and also introduced the testimony of other coal dealers, who examined the coal, and of persons who used some of it. The evidence for appellant tended to prove that the coal was a semi-anthracite, soft and porous,

liable to crumble or slack, entailing much loss by waste, not economical for domestic or manufacturing purposes, and not possessed of the heating or lasting qualities represented. Appellant had sold from the coal to his customers and put it in their cellars. He testified that he sold it with explanations, and read the circulars sent to him to nearly every customer that bought the coal. The evidence showed that in some cases, on demand of customers, he refunded the price and removed the coal. Having introduced this evidence appellant sought to prove as damages the necessary expenses incurred by him on account of the alleged breach of the warranty, such as delivering and removing the coal, but this was not permitted. If there was a breach of the warranty, as claimed, all expenses which were the immediate and proximate result of such breach would be included in the damages. It was the understanding that the coal was bought for resale and with reference to appellant's trade as a coal dealer. It would naturally be expected that in selling to his customers he would follow the customs of dealers, and, within the range of the warranty to him, make bargains with them, and if there was a failure of appellee to furnish the kind and quality of coal warranted, it would be a natural and proximate consequence to appellant that he might have to take back coal resold by him, in pursuance of the bargains so made. The principle is to give compensation in damages for the loss and injury which is the natural and proximate result of the breach of warranty. In ordinary cases the rule of difference between actual value and what the value would be if as warranted, affords such compensation, but if there is additional trouble and expense not compensated by that rule it should be allowed. Sutherland on Damages, Vol. 2, 422–424; Phelan v. Andrews, 52 Ill. 486.

It is urged, however, that appellant was not entitled to prove expenses of delivery and removal, without first producing each customer, and proving a breach as to the particular lot of coal delivered to such customer, so that such witness might be subjected to a rigid cross-examination as

to the manner in which the coal was used and tried, and as to what the witness thought about it. It is claimed that appellee was entitled to know from the customers themselves that the coal was not as warranted, and that they rejected it. It was not claimed at any time by either party that there was any difference in the kind or quality of the different portions of the coal. The evidence for appellant covered all the coal delivered, and tended to prove that none of it fulfilled the conditions of the warranty. The evidence for appellee was almost wholly concerning the kind and quality of coal mined by it in general, the chemical analysis of Bernice coal by the Canadian government and others, and the experience of dealers with that brand of coal. The amount of evidence to be presented to the jury to prove a breach of the warranty, and the witnesses by whom it should be presented, were in the discretion of appellant. He was not required to produce every customer to prove such breach, nor was it essential that both parties to each bargain of resale made by him with his customers should be produced to prove such bargain, or what was done in pursuance of it. It was also sought by appellant to prove a loss of profits in business, and this was not allowed. In this there was no error. The case does not come within the rule applied where there is an existing contract of resale at an advanced price, of which the seller has knowledge, and where the sale is made for the purpose of filling the contract of resale, so that the profits are not uncertain and contingent, depending on the state of the market, the chance of making sales, and the like.

The instructions given to the jury on the question of damages were inconsistent with each other, and those given for appellee on that subject were erroneous. The third given for appellant declared his right to be allowed his reasonable, necessary expenses incurred because of the coal not being of the grade represented, if so shown by the proof, and this was correct; but the evidence on the subject of expenses not having been admitted, the instruction availed appellant nothing. The sixth given for appellee told the

jury that they could not consider any expense incurred on account of removing any coal delivered to any customer, and as a rule of law was in conflict with the foregoing, as well as an interference with the jury on a question of fact as to whether such expense was necessary and reasonable. But the evidence being excluded, these instructions applied to nothing in the case and probably made no difference in the result. The second and fourth instructions for appellee informed the jury that although they might find that the coal was not as warranted and not worth as much as the warranted grade would be, yet appellee was entitled to recover all that the coal delivered was shown by the evidence to have been worth in the market where delivered at the time of delivery. These instructions do not declare the correct rule. The law does not hold the purchaser at a fixed price of a warranted article for the market value of such article. He has a right to have just such an article as the vendor agreed to sell, and at the agreed price. A low price may be the chief inducement to purchase, and the purchaser at such a price is as much entitled to the benefit of his contract of warranty as though the price agreed on was equal to or greater than the market price of goods of the kind and quality warranted. There might be a breach of a warranty and consequent damage, and the market price of the article still be more than the contract price. If there was a breach of warranty, appellant had a right to compensation for the difference by which the coal fell short of what it was agreed to be, and that would not be done merely by making him pay the market value. By deducting the damages from the contract price, the result might or might not be the market value. The measure of recovery, if a breach is proven, would be the contract price, less the damages, and the damages would be so much as would make up the difference between the value of the coal as it was and as it was warranted to be, together with any reasonable, necessary expenses directly resulting from a breach of the warranty. The judgment will be reversed and the cause remanded.

*Reversed and remanded.*