[Civ. No. 3025.    Second Appellate District, Division Two.—November 3, 1919.]

C. COHN, Respondent, v. THE BESSEMER GAS ENGINE COMPANY, Appellant.

[1] SALES—USE OF TERMS HAVING NO EXACT MEANING—ACTION FOR DAMAGES FOR BREACH OF WARRANTY — PAROL EVIDENCE.—Where the terms used in a contract of sale have no exact or scientific meaning, the plaintiff in an action for a breach of a covenant of warranty is entitled to explain the sense in which he understood the words as used in the written instrument.

[2] ID.—BREACH OF WARRANTY—MEASURE OF DAMAGES—SPECIAL DAMAGES—PLEADING.—While sections 3300, 3313, and 3314 of the Civil Code were intended to fix the limitations of recovery as a measure of general damages common to actions for breaches of warranty, recovery may also be had for damages not covered by the general liability for breach of contract where facts are specifically pleaded showing that the injury was one reasonably within the contemplation of the parties. There must also be pleaded facts which show that the conditions likely to result in the special injury complained of were brought to the attention of the defendant at the time the contract was made.

[3] ID.—ACTION FOR DAMAGES—FACTS PLEADED—SPECIAL DAMAGES RECOVERABLE.—In this action for damages for breach of warranty as to the capacity of a gasoline engine, the complaint having alleged with some particularity that at the time the contract was made the defendant was informed of the condition of plaintiff's growing crop, of the contemplated planting of additional acreage, and of plaintiff's dependence and reliance upon the pump to be

---

2.   Damages recoverable on breach of warranty, note, 52 L. R. A. 233.

operated by such engine to supply the water essential to germinate and sustain the crops, and, further, that these facts were sufficient to inform defendant of the disastrous consequences to such crops as were growing or might be planted in the event of a failure of the pumping machinery to meet the guaranteed requirements, the facts pleaded and proved were sufficient to sustain a verdict for such special damages of this nature as are recoverable.

[4] ID.—Loss of Seed and Growing Crops—Special Damages Covered by Section 3314, Civil Code.—In such an action, the special damages suffered in the loss of seed and growing crops are covered by the express provision of section 3314 of the Civil Code awarding "a fair compensation for the loss incurred by an effort in good faith to use" the engine.

[5] ID.—Deprivation of Rental Value of Land—Right of Recovery. In such an action, it having been within the contemplation of the parties that the land was to be used under irrigation, and that the lack of irrigation would destroy its use for the time being, under proper pleadings and evidence, the plaintiff would be entitled to recover the fair rental value of such acreage of his land as he might be deprived of by the failure of an irrigation supply through the breach of defendant's covenant of warranty.

[6] ID.—Inability of Tenants to Pay Rent—Loss not Recoverable. Where the plaintiff had assigned the usufructuary interest during the period claimed for to tenants to whom he had leased the premises for two years at a fixed annual rental, the rental use of the land belonged to the tenants and not to plaintiff, and the fact that by reason of the failure of the pump to supply irrigation the tenants were unable to raise crops on the land and therefore unable to pay the rent did not give the plaintiff a right to recover the rent from the defendant, the leases not having obligated the plaintiff to furnish the tenants a pumping plant.

[7] ID. — Use of Pump Over Considerable Period Justified. — The plaintiff in such action was justified in continuing his efforts to use the pump over the very considerable period of experimenting with it, under the representations of the defendant company that they would remedy its defects, and while all parties were working in good faith to accomplish that end.

APPEAL from a judgment of the Superior Court of Kern County. Milton T. Farmer, Judge. Reversed.

The facts are stated in the opinion of the court.

E. F. Brittain and C. L. Claflin for Appellant.

W. W. Kaye and Kaye & Siemon for Respondent.

SLOANE, J.—The appeal in this action is under the
provisions of section 953a, 953b, and 953c of the Code of
Civil Procedure, and both plaintiff and defendant have pre-
sented portions of the record in supplements accompanying
their briefs. From these supplements, aided by reference to
the voluminous typewritten transcript, we have attempted
to get at the material facts of the case.

The plaintiff, and respondent, entered into a contract with
the defendant corporation for the purchase from defendant
of a gasoline engine at the agreed price of $1,850, to be
installed for the purpose of pumping water for irrigation on
plaintiff's land in the county of Tulare. The contract con-
tained a guaranty by the defendant company that the en-
gine would develop fifty-five horse-power, with from 200 to
250 revolutions per minute, from the use of oil fuel de-
scribed as "No. 3, or Painter's Distillate." Plaintiff
brought suit to recover damages arising from defendant's
failure to deliver the engine within the time agreed upon,
and for failure of the engine, after it was installed, to
meet the conditions of the guaranty. Claim of damages for
delay was subsequently abandoned, by reason of a provision
in the contract that acceptance of delivery should constitute
a waiver of damages for any delay. The action was prose-
cuted for breach of the warranty, and plaintiff recovered a
verdict for seven thousand five hundred dollars.

The only point made by defendant, as against the breach
of the covenant of warranty, is that the evidence shows that
plaintiff failed to use the designated "Painter's Distillate,"
or "No. 3," in his attempts to operate the engine. It seems
to be conceded that the engine proved a failure as a going
concern, its movements, when it did move, being very spas-
modic and inadequate. A dispute exists, under the testi-
mony, as to the precise grade and quality of distillate cov-
ered by the contract designation "No. 3, or Painter's Dis-
tillate." Dealers in gasoline and distillates testified that it
was an oil fuel product of a gravity of thirty-eight degrees
or higher. Plaintiff's witnesses were permitted to testify,
over the objection of defendant's counsel, that prior to the
execution of the contract the plaintiff was shown engines
of the same make in successful operation which were using
a fuel of twenty-eight degrees gravity, described as "tops,"
that plaintiff was told by defendant's agent that this was

the same as "No. 3, or Painter's Distillate," and that these terms were used in the guaranty with that understanding, [1] We think, in view of the fact that the terms used have no exact or scientific meaning, plaintiff was entitled to explain the sense in which he understood the words as used in the written instrument. However, this matter becomes unimportant in view of the fact that the plaintiff experimented with various grades of fuel, running from twenty-eight to fifty-two degrees specific gravity, without success. The defendant was also called upon to make the engine go, and sent its agents at various times to discover the source of the trouble. It does not appear with what grade of fuel the defendant's agents experimented, but it was clearly their business to try the right kind; and as they could not make the engine a success, the jury was justified in finding that the fault was in the mechanism and not in the fuel.

The more serious questions arise on the elements of damage which, under the instructions of the court, the jury was permitted to consider in determining the amount of its verdict. It appears from the record that plaintiff was the owner of the land, comprising about three hundred acres, on which the engine was installed; that he had an ample supply of water, but that it was necessary to pump it for purposes of irrigation; that there were one hundred acres of the tract already planted to alfalfa; that plaintiff was preparing to immediately plant alfalfa on the remaining portion thereof; and that the installation of a new engine was necessary in pumping water to preserve the crop already planted and to germinate and sustain the planting under contemplation. The defendant was advised of these conditions at the time the contract sued on was entered into. Plaintiff claims that, relying upon the contract and guaranty, he expended $617.40 in alfalfa seed, which was sown on the land, and which failed to grow because of the inadequacy of the engine and consequent lack of irrigation, and that the growing alfalfa died out for the same cause, to his damage in the sum of one thousand dollars; that he expended $692.45 for oils and distillates in unsuccessful attempts to operate the engine; and that the engine itself, for which he paid $1,850, was worthless. Plaintiff further claimed damages from loss of three thousand two hundred dollars, rentals from his° tenants, who were unable to raise

crops, and hence unable to pay their rentals; and that he
was also prevented from leasing the premises for a term of
years by the failure to establish his alfalfa acreage, to his
damage in the sum of $9,240.

The court, under its instructions, permitted the jury, in
estimating damages, to allow for the difference between
the actual value and the price paid for the engine, the
amount expended for oil and distillate in attempting to
operate the engine, the cost of alfalfa seed planted in antici-
pation of the successful operation of the engine, the loss,
if any, from the dying out for want of irrigation of the
growing alfalfa, and also for any loss in the value of the
use and occupation or rental value of his land during the
years 1913 and 1914 because of the breach of the warranty.
Appellant takes the position that, under the provisions of
sections 3313 and 3314 of the Civil Code, recovery for dam-
ages for breach of warranty of an article of personal prop-
erty for a particular use is limited to the excess in value,
if any, which the property would have had if it had been as
represented, over its actual value at the time, together with
"a fair compensation for the loss incurred by an effort
in good faith to use it for that purpose." Read in connec-
tion with section 3300 of the same chapter and article of
the code, there is room for this contention. Section 3300
provides that "for the breach of an obligation arising from
contract, the measure of damages, except where otherwise
expressly provided by this code, is the amount which will
compensate the party aggrieved for all the detriment proxi-
mately caused thereby, or which, in the ordinary course of
things, would be likely to result therefrom." By sections
3313 and 3314, above referred to, there is "otherwise ex-
pressly provided" a measure of damages, to whatever ex-
tent the provisions of those sections are open to a different
interpretation from that to be given to section 3300.

[2] It may be conceded that the sections cited were
intended to fix the limitations of recovery as a measure of
general damages common to actions for such breaches of
warranty. But it is a well-recognized rule of law that
recovery may be had for damages not covered by the general
liability for breach of contract, where facts are specifically
pleaded showing that the injury was one reasonably within
the contemplation of the parties. As defined by Chitty on

Pleading, 410, 411: "Damages are either general or special. General damages are such as the law implies or presumes to have accrued from the wrong complained of. Special damages are such as really took place, and are not implied by law; and are either superadded to general damages arising from an act injurious in itself . . . or are such as arise from an act indifferent and not actionable in itself, but injurious only in its consequences. . . . And whenever the damages sustained have not necessarily accrued from the acts complained of, and consequently are not implied by law, then in order to prevent the surprise of the defendant which might otherwise ensue on the trial, the plaintiff must in general state the particular damages which he has sustained." It may be further added, to cover the requirements in such a case as this, that there must also be pleaded facts which show that the conditions likely to result in the special injury complained of were brought to the attention of the defendant at the time the contract was made. [3] The complaint in this action alleges with some particularity that at the time the contract of purchase and sale, with defendant's guaranty of the efficiency of this engine, was made, the defendant was informed of the condition of plaintiff's growing crop, and the contemplated planting of additional acreage of alfalfa, and of plaintiff's dependence and reliance upon this pump to supply the water essential to germinate and sustain the crops; and, further, that the facts as alleged were sufficient to inform defendant of the disastrous consequences to such crops as were growing or might be planted in the event of a failure of the pumping machinery to meet the guaranteed requirements. We think the facts pleaded and proved were sufficient to sustain a verdict for such special damages of this nature as are recoverable. (*Lichtenthaler* v. *Samson Iron Works,* 32 Cal. App. 220, 226, [162 Pac. 441].) The case above cited not only sustains the sufficiency of the complaint as to special damages, but holds that damages for loss of crops by failure of irrigation machinery may be recovered under section 3314 of the Civil Code. Consequential or special damages are also upheld in an action for breach of warranty of quality in *Snyder* v. *Holt Mfg. Co.,* 134 Cal. 324, [66 Pac. 311], but the statutory provision is not discussed.

Appellant places much stress on the statements of the supreme court of South Dakota in *Hermon* v. *Silver*, 15 S. D. 476, [90 N. W. 141], commenting upon a like code provision fixing the measure of damages for breach of a warranty, and of the court of appeals, first appellate district, of this state, in *Tibbals Oakum Co.* v. *Meigs*, 11 Cal. App. 298, [104 Pac. 844]; but neither of these decisions involved any question of special damages. In the South Dakota case the trial court had attempted to lay down a rule different from that of the statute for determining the failure in value of the article warranted, and the supreme court very properly held that in this respect the measure of the statutory rule must be followed. In the California case the damages claimed by reason of a failure in the warranted quality of a quantity of oakum was the difference between the price which the purchaser paid and what he was able to sell the article for. The court of appeal upheld the rule of section 3313 of the Civil Code, that the loss from this depreciation was the difference between the value of the goods as warranted and their actual value in the damaged condition. In stating this rule the court uses the language cited by appellant: "This section lays down a simple plain rule which eliminates all imaginary claims to damages in such cases. It is intended to do justice to both the seller and the buyer"; but proceeds with the further comment that "the code only recites the rule as long established in England and since adopted in most of the United States," citing Benjamin on Sales, 5th ed., 1617; 3 Sutherland on Damages, sec. 670; and *Hodgman* v. *State Line etc. R. R. Co.*, 45 Ill. App. 395. Each one of these authorities, while disclosing the general rule of the statute, recognizes the right of recovery in such actions under proper pleadings of such further proximate damages as were within the contemplation of the parties when entering into the contract. "Direct damages are always recoverable, and consequential losses must be compensated if it can be determined that the parties contracted with them in view." (Sutherland on Damages, sec. 45; Sedgwick on Damages, secs. 759, 765–767.)

[4] But entirely aside from the considerations we have been discussing, we are inclined to think that such special damages as plaintiff suffered in the loss of seed and grow-

ing crops are covered by the express provisions of section 3314 of the Civil Code. It is so held in *Lichtenthaler* v. *Samson Iron Works, supra,* although the question was apparently not discussed. But the reason of the rule there laid down, considered in the light of the prevailing trend of judicial opinion in other jurisdictions as to the correct measure of damages for breach of warranty of fitness for a special purpose, tends to support the conclusion that it was intended to cover all the natural and proximate injuries arising from the breach of contract, or within the contemplation of the parties. The clause of section 3314, in question, provides for "fair compensation for the loss incurred by an effort in good faith to use" the article in question for the purpose intended. As appellant interprets this provision, he would confine it to expenses directly incurred in an attempt to operate the engine, such as for fuel, labor, repairs, etc. There are other losses that might quite as naturally and proximately flow from such an effort to use the defective article, and be as clearly within the contemplation of the parties. It was understood that a small pump which had been previously installed was to be removed, and that the new pump was to be the sole reliance of the plaintiff for sustaining his growing crop of alfalfa and germinating the seed for further acreage; and it was just as certain, if the plaintiff went on with the farm work to maintain which this pump was to be installed, and it failed in its purpose, that the crops and labor and seed would be a total loss, as it was that time and money and fuel would be expended in trying to get results from the pump. The loss of the growing crop and seed for the further planting were the direct result of a reliance upon and an attempt to utilize the machinery guaranteed by defendant's contract.

[5] We are further of the opinion, under a proper state of the pleadings and evidence, that plaintiff, as declared by the trial court's instruction to the jury, would be entitled to recover the fair rental value of such acreage of his land as he might be deprived of by the failure of an irrigation supply through the breach of defendant's covenant of warranty. It was within the contemplation of the parties that this land was to be used under irrigation, and that the lack of irrigation would destroy its use for the time being. [6] But this does not seem to be the theory of plaintiff's de-

mand for rental values, either under the pleadings or under the evidence. He alleges and proves that the usufructuary interest during the period claimed for had been assigned to tenants to whom he had leased the premises for two years at an agreed rental of one thousand six hundred dollars per annum. The rental use of the land belonged to the tenants and not to plaintiff. The allegation of the complaint is that by reason of the failure of this pump to supply irrigation the tenants were unable to raise crops on the land, that they were dependent on the proceeds from their crops to pay their rent, and that by this combination of circumstances plaintiff was unable to collect from them. The lease is set out in the record. It contains nothing to indicate that plaintiff was obligated to furnish the tenants a pumping plant. They were not, so far as appears, released from their obligation to pay rent by reason of the failure of either the plaintiff or the defendant to supply irrigation facilities. The plaintiff's loss in this respect was not of the value of the use of his land, for this belonged to his tenants. His loss arose from the tenants' inability to pay, which might or might not be from the fault of defendant, but in any event, it is too remote and uncertain a liability to be the subject of damages in this action. The same is obviously true as to the claim of damages from alleged loss of opportunity to make a long term lease of the ranch to some other prospective tenants, by reason of failure to develop it into an alfalfa farm.

The plaintiff was entitled to recover the difference in the value of the pump as warranted and as it actually was delivered, together with the loss from destruction of his growing alfalfa, the value of the new seed planted, and the expense incident to attempts to operate the pump; but as the amount of the verdict is greatly in excess of these items, it is obvious that the above indicated improper items of damage entered into the jury's estimates, and a new trial will have to be granted along the lines of liability indicated in this opinion.

[7] It may be stated further, that the plaintiff was justified in continuing his efforts to use the pump over the very considerable period of experimenting with it, under the representations of the defendant company that they would rem-

edy its defects, and while all parties were working in good faith to accomplish that end.

Judgment reversed.

Finlayson, P. J., and Thomas, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on December 3, 1919, and the following opinion then rendered thereon:

THE COURT.—Conceding the point urged by respondent in his petition for a rehearing that defendant in this case is liable for damages resulting from the failure of the Quimbys to pay the stipulated rentals under their lease, a new trial would still have to be granted under the present state of the pleadings and evidence.

We have held that it was within the province of the jury to allow in its verdict the $692.45—the alleged cost of attempting to operate the defective engine—the sum of $617.40 for seed planted which did not germinate, one thousand dollars for the alfalfa dying out for lack of irrigation, and $1,813, the price paid for the engine—aggregating the sum of $4,122.85. The verdict and judgment was for seven thousand five hundred dollars, thus leaving $3,378 to be applied on this item of rentals. This would cover the full contract price under the lease for two years. We do not believe respondent could extend his reliance upon the guaranteed sufficiency of this engine over so long a period. It would devolve upon him to provide other irrigating machinery to protect at least the second year's crops of his tenants. But, in any event, the stipulated rentals under the lease with his tenants was not shown to be the measure of his damages. The tenants apparently did not cancel the lease because of the cutting off of their irrigation facilities. They were not entirely deprived of irrigation from other sources, there being a portion of the year when water was obtainable from the Tule River ditches. This land presumptively had still some rental value to the tenants, for which they were liable to respondent in the absence of an abandonment or rescission of their lease. But the pleadings or the evidence do not conform to this theory of recovery, but are predicated on the right to recover from defendant the entire sum of the rentals stipulated in the lease.

We think appellant is entitled to a new trial. Whether respondent can recover for loss of rents under amended pleadings is left an open question.

The petition for rehearing is denied.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on January 2, 1920.

All the Justices concurred.